Raed **BADIER**, Plaintiff,

v.

Alberto **GONZALES**, Attorney General of the United States; Michael Chertoff, Secretary of the Department of Homeland Security; Rosemary Melville, Director of the Atlanta District Office of the U.S. Citizenship and Immigration Services; Emilio Gonzalez, Director of the U.S. Citizenship and Immigration Services; and Robert Mueller, Director of the Federal Bureau of Investigation, Defendants.

No. CIV.A. 1:06–CV–01431.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 1, 2006.

---

Charles H. Kuck, Kuck Casablanca LLC, The Immigration Law Firm, Malvena Stuart Driscoll, Atlanta, GA, for Plaintiff.

Aileen Bell Hughes, Office of United States Attorney, Atlanta, GA, for Defendants.

## ORDER

MARTIN, District Judge.

This action seeking a Writ of Mandamus is before the court on Defendants' Motion to Dismiss [Doc. No. 6].

## I. *Factual and Procedural Background*

Plaintiff, Raed Badier ("Mr.Badier"), is a native of Kuwait and a citizen of Jordan. Mr. Badier has been a legal permanent resident of the United States since December 1, 1995. He applied to become a naturalized citizen of this country in January of 2001, and was denied on "the discretionary good moral character ground." (Compl.¶ 7.) Mr. Badier filed a second application for naturalization on July 5, 2005. It is the July 5, 2005 application which is subject of this Order.

The court is advised that the process of becoming a naturalized citizen has four stages: **first,** the application; **second,** a background check, which includes a criminal records check and other investigations; **third,** the interview; and **fourth,** the administration of the oath of allegiance. This process for Mr. Badier remains in the second stage. In that regard, the United States Citizenship and Immigration Services ("USCIS") submitted a request to the Federal Bureau of Investigation ("FBI") for a "name check," [1] which is part of the background investigation for Mr. Badier's application. (Decl. of Michael A. Cannon ¶ 21, Aug. 10, 2006.) That name check was submitted on July 23, 2005, and the FBI forwarded the results to USCIS in Washington D.C. on July 26, 2006. (Cannon Decl. ¶ 21.) To the court's knowledge, Mr. Badier's process has not moved to the third stage and, as of the date of this Order, USCIS has not interviewed Mr. Badier in conjunction with his application for naturalization.

Mr. Badier filed the instant action on June 14, 2006 seeking a writ of mandamus compelling the USCIS to process his application. On October 12, 2006 Defendants responded by filing a Motion to Dismiss alleging that this court lacks subject matter jurisdiction over this dispute.

## II. *Analysis*

Federal Rule of Civil Procedure 12(b)(1) enables a court to grant a motion to dismiss when it lacks jurisdiction over the subject matter of the dispute. Fed. R.Civ.P. 12(b)1. Federal Rule 12(h)(3) mandates dismissal of cases lacking subject matter jurisdiction at any time during a proceeding: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Generally, a U.S. district court has subject matter jurisdiction over those cases arising from the constitution, laws, or treaties of the United States, under 28 U.S.C. § 1331.

Plaintiff asserts that the court has federal question jurisdiction under (1) the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1329; (2) 28 U.S.C. § 1331 in conjunction with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 704 and 706; and (3) 28 U.S.C. § 1361. Defendants say this action should be dismissed because these statutes do not provide a basis for subject matter jurisdiction. The court will consider the respective arguments of the parties.

### A. Jurisdiction under the INA (8 U.S.C. § 1329)

Plaintiff states that he has brought this action pursuant to, among other statutes, a provision of the INA, which reads in pertinent part:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United

---

**1.** The FBI performs a "name check" by searching its Universal Index, an index of information relating to individuals, organizations, companies, publications, activities, and foreign intelligence matters, for references to an individual's name. (Cannon Aff. ¶¶ 5,9(c), 11.)

States that arise under the provisions of this subchapter ... [n]othing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers.

8 U.S.C. § 1329. The Supreme Court noted that this provision was "amended by [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1252(g)) ] to make clear that it applies only to actions brought by the United States." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 477, n. 4, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

The statute expressly states that it does not confer jurisdiction over suits against the United States, its agencies, and their officers. Since this action was brought by Mr. Badier, and not the United States, the court may not exercise jurisdiction pursuant to 8 U.S.C. § 1329.

**B. Jurisdiction under the APA (5 U.S.C. §§ 704 and 706)**

■ Plaintiff cites the APA, 5 U.S.C. § 704, as a statutory basis for federal question jurisdiction under 28 U.S.C. § 1331. 5 U.S.C. § 704 confers jurisdiction upon the court to review: "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Further, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable" may be reviewed at the time the final agency action is reviewed. *Id.* For an agency action to be "final" it "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" or, said another way, it must "be [an action] by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78, 117

S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotations and citations omitted).

In this case, no final agency action has taken place. USCIS has neither granted nor denied Mr. Badier's application for naturalization. Mr. Badier's application has not yet been initially adjudicated, much less proceeded through any internal USCIS appeals process. In a sense, Mr. Badier's Complaint acknowledges this insofar as he seeks to have this court compel the USCIS to *take action*, rather than to review the outcome of the agency's final action. Mr. Badier's application is clearly at an intermediate or interlocutory stage and is not, therefore, reviewable under Section 704.

■ Another provision of the APA, 5 U.S.C. § 706(1), directs the court to "compel agency action unlawfully withheld or unreasonably delayed." [2] However, this court may take action pursuant to 5 U.S.C. § 706 only where an agency failed to take a discrete action that it was required to take. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). 5 U.S.C. § 706 empowers this court to compel an agency to perform a ministerial or non-discretionary act. *Id.* at 63–64, 124 S.Ct. 2373. There is no statutorily established time period after receiving an adjustment of status application during which the USCIS is required to set an examination. Rather, the INA indicates that Congress left adjustment of status and all procedures prior to the examination up to the discretion of the Attorney General. 8 U.S.C. § 1255(a) (the Attorney General may "in his discretion and under such regulations as he may prescribe," choose to grant or deny adjustment of status to an alien lawfully admitted for permanent residence). Thus, this

---

**2.** This provision is mirrored elsewhere in the code: 5 U.S.C. § 555(b) requires agencies to resolve matters presented to them "within a reasonable amount of time."

court cannot exercise jurisdiction over this matter, pursuant to 5 U.S.C. §§ 704 or 706.

## C. Jurisdiction through 28 U.S.C. § 1361

■■ 28 U.S.C. § 1361 states in full: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.[3] Under Section 1361, "The test for jurisdiction is whether mandamus would be an appropriate means of relief." *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980).[4] In the Eleventh Circuit, granting mandamus relief is a drastic remedy "to be invoked only in extraordinary situations." *In re Bell-South Corp.,* 334 F.3d 941, 953 (11th Cir. 2003) (internal quotations and citation omitted). Also, in resolving whether the court has jurisdiction under 28 U.S.C. § 1361, "allegations of the complaint, unless patently frivolous, are taken as true." *Alexander,* 609 F.2d at 781. Mandamus is an appropriate means of relief when "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy [is] available." *Cash v. Barnhart,* 327 F.3d 1252, 1258 (11th Cir.2003) (internal quotations and citation omitted).

In this case, Mr. Badier has not demonstrated a "clear right to the relief requested." *Id.* Plaintiff seeks to have this court compel the USCIS to process his application. The language of Section 245 of the INA establishes adjustment of status as a privilege rather than a right. 8 U.S.C. § 1255. Plaintiff points to no statute which grants a clear right to have his interview scheduled promptly. The court is aware that the INA does set explicit time limits for other agency actions. For example, 8 U.S.C. § 1447(b) expressly provides that once an examination takes place, the USCIS must make a determination concerning the application within 120 days. *Id.* However, the statute sets no time constraints for the USCIS in scheduling an initial examination.[5] As such, Plaintiff has established no "clear right" to relief.

To gain relief under 28 U.S.C. § 1361, Mr. Badier must also demonstrate that Defendants were under a clear duty to act. Even assuming all facts as stated in the Complaint, Defendants' duty to act has not been established. The court is aware of no statutory guidance or binding precedent which is directly on point. The court has therefore reviewed non-binding precedent. Some courts have held that as administrative agencies, the USCIS and INS have a non-discretionary duty to process applications within a reasonable amount of time.[6] *Iddir v. I.N.S.,* 301 F.3d 492, 500 (7th Cir.2002) ("INS did have the duty to adju-

---

3. The court is aware that Federal Rule of Civil Procedure 81(b) has formally abolished the writ of mandamus. Fed.R.Civ.P. 81(b). However, the rule provides that "[r]elief heretofore available by mandamus ... may be obtained by appropriate action or ... motion." *Id.* The court will consider Mr. Badier's request for relief in this light.

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

5. One court has stated that district courts may only review a naturalization petition at two points in the process, those explicitly contemplated by statute: upon denial of the petition and when the USCIS fails to rule within 120 days of examination. *See, e.g., Baez–Fernandez v. I.N.S.,* 385 F.Supp.2d 292, 294 (S.D.N.Y.2005).

6. The court is mindful that many of the decisions it has reviewed were decided before the Supreme Court's 2004 holding in *Norton,* 542 U.S. at 63, 124 S.Ct. 2373.

dicate the appellants' applications in a reasonable period of time."); *Nyaga v. Ashcroft,* 186 F.Supp.2d 1244, 1252–53 (N.D.Ga.2002) (Evans, J.) (requiring agency to make "diligent efforts" to adjudicate visa application) (vacated as moot)[7]; *Agbemaple v. I.N.S.,* No. 97 C 8547, 1998 WL 292441, at *2 (N.D.Ill. May 18, 1998) (holding that adjudication "must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely. Congress could not have intended to authorize potentially interminable delays.").

Other courts have held that scheduling initial examinations remains within the agency's discretion and the agency has no duty to schedule interviews within a certain time period. *Mustafa v. Pasquerell,* No. Civ. SA05CA–658–XR, 2006 WL 488399, at *5 (W.D.Tex. Jan. 10, 2006) (finding a lack of subject matter jurisdiction over the timetable of adjustment of status proceedings); *Zheng v. Reno,* 166 F.Supp.2d 875, 879–80 (S.D.N.Y.2001) (finding the court lacked subject matter jurisdiction to compel the INS to schedule an examination for adjustment of status).

"[W]here the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it ... cannot be controlled by mandamus." *Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 219, 50 S.Ct. 320, 74 L.Ed. 809 (1930). Given the divergent positions taken by federal courts on this issue, this court will not pronounce that a duty to act on the part of the USCIS is so "clear" as to justify relief pursuant to 28 U.S.C. § 1361.

Finally, to warrant granting relief under 28 U.S.C. § 1361, a plaintiff must have "no other adequate remedy available." *Barnhart,* 327 F.3d at 1258 (internal quotations and citation omitted). The court is persuaded that Mr. Badier has no administrative or judicial avenue by which to compel the USCIS to schedule his interview. However, in order to be entitled to relief pursuant to 28 U.S.C. § 1361, Mr. Badier must establish each of the three requirements set forth in *Barnhart.* He has failed to do so, therefore this court has no jurisdiction over this dispute.

### III. *Conclusion*

Because Plaintiff has failed to establish a basis for this court to exercise jurisdiction over this action, Defendants' Motion to Dismiss [Doc. No. 6] is GRANTED.

---

**7.** Mr. Badier's case is distinguishable from *Nyaga* because the applicant in that case had won a lottery to apply for a visa under a statute which mandated the process. *Nyaga,* 186 F.Supp.2d at 1245. *See* 8 U.S.C. § 1153(e)(2): "Immigration visa numbers made available under subsection (c) of this title *shall* be issued to eligible qualified immigrants strictly in a random order ...." (emphasis added). Also, the application in the *Nyaga* case had originally been filed in October, 1997, and no action had been taken on it at the time of the court's February, 2002 ruling.