Mikhail **MORGOVSKY**

v.

**DEPARTMENT OF HOMELAND SE-CURITY, Citizenship and Immigration Services, Alberto Gonzales, Michael Chertoff, Emilio Gonzalez and Denis Riordan.**

Civil Action No. 07–10145–RGS.

United States District Court,
D. Massachusetts.

Oct. 18, 2007.

Alexander Lumelsky, Lumelsky & Mogilevich, LLP, Farmington, CT, for Plaintiff.

Mark J. Grady, United States Attorney's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

STEARNS, District Judge.

Mikhail Morgovsky, an immigrant from Ukraine, brought this lawsuit as a means of prodding action by immigration authorities on his apparently dormant 3–year old petition for naturalization. The Complaint sets out three Counts: a request for declaratory judgment pursuant to 8 U.S.C. § 1421(c) (Count I); alleged violations of the Administrative Procedures Act (APA) (Count II); and an alleged due process violation of the Federal Civil Rights Act, 42 U.S.C. § 1983 (Count III).[1] On May 3, 2007, defendants—the agencies and officials who oversee the naturalization system[2]—collectively moved to dismiss the Complaint for lack of subject matter juris-

---

1. As the Federal Civil Rights Act does not authorize a direct cause of action against federal officials, Morgovsky agreed to dismiss the section 1983 Count.

2. Specifically, the Department of Homeland Security (DHS), Citizenship and Immigration Services (CIS), (former) United States Attorney General Alberto Gonzales, DHS Secretary Michael Chertoff, CIS Director Emilio Gonzalez, and CIS District Office Director Denis Riordan.

diction. Defendants argue that Morgovsky has failed to exhaust his administrative remedies as required by law. As the court agrees with defendants' failure to exhaust argument, it will not address the alternative contention that Morgovsky has failed to state a justiciable claim.

## BACKGROUND

The essential facts are not in dispute. Morgovsky immigrated to the United States in 1994. He applied for naturalization on July 16, 2004. On November 7, 2005, CIS denied the application after determining that Morgovsky had failed to register for the selective service. On December 5, 2005, Morgovsky requested a hearing before a supervisory immigration officer. His appeal was heard on April 26, 2006. On May 16, 2006, Morgovsky submitted additional evidence in support of his application.[3] Despite numerous entreaties by his counsel, a decision on Morgovsky's appeal remains in abeyance. On January 26, 2007, Morgovsky filed this lawsuit.[4] He asks that the court grant relief by issuing a writ of mandamus directing CIS to act on his petition. In the alternative, he asks that the court conduct a naturalization hearing for his benefit pursuant to 8 U.S.C. § 1421(c). On September 6, 2007, the court heard argument on defendants' motion to dismiss and Morgovsky's motion for an expedited judgment.

## DISCUSSION

Under the Immigration and Naturalization Act (INA), CIS is responsible for adjudicating naturalization applications. *See* 8 U.S.C. § 1446(a)-(c). DHS, whose Secretary has the "sole authority" to naturalize persons as United States citizens, has established regulations governing the naturalization process. *See* 8 C.F.R. § 335.1 *et seq.* Under the regulations, an applicant is required to undergo a background investigation, including a criminal history check, and a personal interview. 8 C.F.R. § 335.2. If CIS denies a naturalization petition, the applicant may seek an internal review by requesting a hearing before an immigration officer. 8 U.S.C. § 1447(a). If, after the hearing, the denial of the petition is affirmed, the applicant may seek judicial review in the district court. 8 U.S.C. § 1421(c).[5] *See generally Jalloh v. Dep't of Homeland Security,* 2005 WL 591246, *3 n. 6 (D.Mass. March 11, 2005).

Because the hearing officer has yet to actually deny Morgovsky's application, defendants argue that under the express terms of section 1421(c), Morgovsky is ineligible to seek judicial review. *See Abiodun v. Gonzales,* 217 Fed.Appx. 738, 2007 WL 196572, *3 (10th Cir.2007); *Farah v. Gonzales,* 2006 WL 1116526, *2 (D.Minn. Apr.26, 2006); *Zaidi v. Chertoff,* 2006 WL

---

3. Morgovsky claims that at the April 26, 2006 hearing, the adjudicating officer stated that she would deny the appeal "within two or three weeks" regardless of the content of any further submissions by Morgovsky.

4. On July 6, 2007, the Federal Bureau of Investigation (FBI) requested a new "original" Privacy Waiver and Certification of Identity Form from Morgovsky, which he submitted on August 9, 2007. Following the hearing, Morgovsky filed an Amended Complaint adding the FBI as a defendant and requesting that the court issue a writ of mandamus directing the FBI to complete his

background check forthwith. The amendments do not affect the court's consideration of the previously filed motion to dismiss.

5. Section 1421(c), which is jurisdictional in nature, specifically provides that "[a] person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides...."

3147722, *2 (N.D.Ill. Nov.1, 2006); *Jalloh, supra* at *3; *Li v. I.N.S.,* 2003 WL 102813, *4 (S.D.N.Y. Jan.10, 2003). Moreover, because the APA authorizes judicial review only of "final" agency decisions, defendants argue that there is no right at all to a review of CIS's preliminary denial of a naturalization application. *See* 5 U.S.C. § 706; *Al Gadi Gadi v. Chertoff,* 2007 WL 1140825, *5 (E.D.Cal., April 17, 2007).

■ Morgovsky contends that notwithstanding section 1421(c) of the INA, the court has jurisdiction to act on his claims by virtue of the Mandamus and Venue Act (MVA).[6] The MVA grants federal district courts "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To be entitled to mandamus relief, an applicant must show that: (1) his claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. *In re City of Fall River, Mass.,* 470 F.3d 30, 32 (1st Cir.2006); *In re Bluewater Network & Ocean Advocates,* 234 F.3d 1305, 1315 (D.C.Cir.2000). District courts disagree over whether the MVA is an appropriate vehicle for challenging procedural delays in the processing of immigration petitions, although the weight of the decisions discourages any liberal issuance of the writ. *See Omar v. Mueller,* 2007 WL 2318059, *3 (D.N.J. Aug.14, 2007) (district court lacked mandamus jurisdiction to compel CIS to act on an alien's naturaliza-

tion application as there is no requirement that an examination be completed within a defined period of time); *Yan v. Mueller,* 2007 WL 1521732, *6 (S.D.Tex. May 24, 2007) (finding no mandamus jurisdiction because Congress had not imposed a time limit on the FBI for completing an applicant's background investigation); *Danilov v. Aguirre,* 370 F.Supp.2d 441, 445 (E.D.Va.2005) (alien could not rely on the more general jurisdictional provisions of the APA or the MVA to circumvent the specific provisions of the INA).

■ Mandamus is an extraordinary writ to be reserved for special situations in which an agency or official has failed to act (or has acted) in disregard of a clear legal duty and where there is no adequate conventional means for review, such as that provided by the APA. *In re City of Fall River,* 470 F.3d at 32.[7] *See also Pittston Coal Group v. Sebben,* 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). Here, in the absence of a clearly established duty to act on a naturalization petition within a prescribed period of time, the court agrees with those of its sister courts that have held that the MVA attaches only in the most egregious of cases. A delay of some sixteen months in reaching a decision on an appeal of a denial of a naturalization application, while perhaps unusual, is not so extreme or outrageous as to warrant extraordinary relief.

■ Although there are differences in the applicable tests, a claim seeking mandamus under the MVA is "in essence" the same as a claim for relief under the APA.

---

6. Morgovsky has the burden of establishing the court's subject matter jurisdiction. *McNutt v. Gen'l Motors Acceptance Corp.,* 298 U.S. 178, 188–189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

7. *See Tang v. Chertoff,* 493 F.Supp.2d 148, 156 (D.Mass.2007) (because immigration au-

thorities have a non-discretionary duty to process an alien's application for an adjustment of status, a district court has subject matter jurisdiction to consider whether a delay in adjudication is unreasonable under the APA's "reasonable time" requirement).

*Independence Mining Co., Inc. v. Babbitt,* 105 F.3d 502, 507 (9th Cir.1997). "[A] claim under [APA] § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. So. Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). As the Court explained in *Norton,* "[t]he limitation [of the APA] to required agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65, 124 S.Ct. 2373. Here, there is no requirement that CIS act immediately, or even promptly, on the appeal of a preliminary denial of a naturalization application. *See Badier v. Gonzales,* 475 F.Supp.2d 1294, 1297–1298 (N.D.Ga. 2006). While Morgovsky correctly states that he is entitled to have his appeal adjudicated within a "reasonable time," as section 555(b) of the APA requires,[8] the sixteen month delay in deciding his appeal is not *per se* unreasonable.[9]

The delay in processing Morgovsky's background check is attributable to neither agency malfeasance nor inaction, but to an enormous flood of applications that have slowed the bureaucratic process and led to a backlog in the completion of the required background checks.[10],[11] While the court is sympathetic to Morgovsky's desire to visit his ailing family members in Ukraine without worry over the immigration consequences of a departure from the United States, there are others caught in the naturalization system whose claims are no less compelling. The court simply has insufficient reason to advance Morgovsky to the head of the queue.

*The Due Process claim*

■■■ Article I, § 8, cl. 4, of the Constitution provides: "Congress shall have Power ... [t]o establish an uniform Rule of Naturalization...." Thus, "[a]n alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress." *United States v. Ginsberg,* 243 U.S. 472, 474, 37 S.Ct. 422, 61 L.Ed. 853 (1917). There is no protected liberty interest in naturalization beyond that which the Congress has provided by statute. What is at issue in this case is not a denial

---

**8.** Section 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

**9.** There is, of course, a point at which delay cannot be justified under the "rule of reason" established by *Telecommunications Research & Action v. F.C.C.,* 750 F.2d 70, 79–80 (D.C.Cir.1984). The court understands the crush of applications which CIS must process and the efforts it must exert to insure that only those who are truly qualified are naturalized as citizens. Still there are outer limits. *See Singh v. Still,* 470 F.Supp.2d 1064, 1070–1071 (N.D.Cal.2007) (a seven year delay by CIS in acting on an adjustment of status petition justified the issuance of a writ of mandamus).

**10.** As Myra Strauss, a Supervisory Adjudications Officer for CIS, explains: [w]hen an individual applies for naturalization, the agency conducts numerous mandatory criminal and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application. Strauss Decl. ¶ 3.

**11.** Defendants point out that the FBI processed 3.4 million background checks in Fiscal Year 2006 alone.

of Morgovsky's right to be considered for naturalization, but the failure of CIS to adjudicate his petition in as timely a manner as he would like. This may be a denial of desired process, but it is not a denial of due process.

*ORDER*

For the foregoing reasons, defendants' motion to dismiss is *ALLOWED*. The dismissal will enter without prejudice.

SO ORDERED.