**YONG TANG and Yan Luo, Plaintiffs,**

v.

**Michael CHERTOFF, Secretary of the Department of Homeland Security; Emilio Gonzalez, Director of U.S. Citizenship and Immigration Services; Paul Novak, Director of USCIS Vermont Service Center; and, Robert Mueller III, Director of the Federal Bureau of Investigation, Defendants.**

**Civ. Action No. 07cv10231–NG.**

United States District Court,
D. Massachusetts.

June 26, 2007.

---

Christopher R. Donato, United States Attorney's, Boston, MA, for Defendants.

Vard R. Johnson, Boston, MA, for Plaintiffs.

### *AMENDED MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS*

GERTNER, District Judge.

This Memorandum and Order replaces the one filed earlier today. Two changes have been made: This Memorandum has a full caption listing all defendants, and the ampersand has been replaced in the title. No other changes have been made.

## I. INTRODUCTION

This is an action to compel the United States Citizenship and Immigration Service ("USCIS") to act on a four-year-old application for adjustment of status to permanent residency. Numerous such cases are before this Court and others throughout the country. Courts have split on whether there is subject matter jurisdiction to review an unreasonable delay in the processing of an application for permanent residency.

For the reasons below, I **DENY** the government's motion to dismiss (document # 9), and **GRANT** the relief sought by plaintiffs. I cannot accept the argument that, simply because adjustment of status is a form of discretionary relief, there is no limit to the length of time the USCIS may take processing applications. The duty to act is no duty at all if the deadline is eternity.

## II. BACKGROUND

Plaintiff Yong Tang ("Tang"), a non-permanent resident, filed an I–485 application on June 23, 2003, to adjust his status to permanent residency, with his wife and co-plaintiff Yan Luo as derivative beneficiary. He filed an I–140 Immigrant Petition for Alien Worker through his employer, Millennium Pharmaceuticals, on May 30, 2003; it was approved by USCIS on March 22, 2004. He and his wife were fingerprinted on August 31, 2004.

Since then, they have seen no progress on their permanent residency application. They inquired into its status on March 11, 2005, July 12, 2005, August 10, 2005, September 9, 2005, September 13, 2005, May 2, 2006, October 16, 2006 and January 30, 2007, but were told each time simply that their background checks had not been completed, and to check back in 6 months. Ex. C–1 through C–7 and Ex. 4 to Complaint (document # 1–2).

In May 2006, plaintiffs made a Freedom of Information and Privacy Act ("FOIPA") request to the Federal Bureau of Investigation ("FBI") seeking any records relating to them; they were told that there were no such records. Ex. E–1, E–2 to Complaint (document # 1–2). Plaintiffs finally filed this action on February 6, 2007, 43 months after the initial application, seeking to compel adjudication of Tang's application for adjustment of status.

In response to the Court's order of May 22, 2007, defendants filed an affidavit on June 5 stating that Yan Luo's background check was completed, but that Yong Tang's was still pending as of that date (document # 15).

## III. STANDARD OF REVIEW

A complaint is subject to dismissal under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Gorski v. New Hampshire Dep't of Corrections,* 290 F.3d 466, 473 (1st Cir.2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). The allegations in the complaint should be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Moss v. Camp Pemigewassett, Inc.,* 312 F.3d 503, 506 (1st Cir.2002).

There are no disputed facts in this case. The parties disagree only on matters of law.

## IV. SUMMARY OF ARGUMENTS

The government moves to dismiss for lack of subject matter jurisdiction. Plaintiffs name three statutory bases for jurisdiction: the Mandamus statute (28 U.S.C. § 1361), the Declaratory Judgment Act (28 U.S.C. § 2201 et seq.), and the federal question statute (28 U.S.C. § 1331) in com-

bination with the Administrative Procedures Act ("APA").

Defendants argue first that the Declaratory Judgment Act is not an independent basis of jurisdiction. They then argue that adjustment of status is within the discretion of the Attorney General, and that the Immigration and Naturalization Act ("INA") provides no time-line for resolution of applications for adjustment of status. Since there is no duty to timely process applications, defendants argue, there is nothing to Mandamus, and no standard against which to declare a delay unreasonable under the APA. Further, defendants point to INA § 242 (8 U.S.C. § 1252(a)(2)), which bars judicial review of certain actions on which the Attorney General is given discretion under the INA. Since adjustment of status is within the discretion of the Attorney General, ·defendants argue that no aspect of it is reviewable.

Plaintiffs counter that, while the final decision as to adjustment of status is within the Attorney General's discretion, aspects of the process, such as the timing of these decisions, are not. They argue that the Administrative Procedures Act (specifically 5 U.S.C. § 555(b)) imposes a nondiscretionary duty to adjudicate applications in a reasonable time, and that review of this duty is not barred by the INA's jurisdiction-stripping provision.

■ Defendants are correct that the Declaratory Judgment Act is not an independent basis for jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Fox v. Lappin*, 441 F.Supp.2d 203, 207 (D.Mass.2005). The other arguments are discussed below.

## V. WHETHER INA § 242 PREVENTS REVIEW

INA § 242 strips the Court of jurisdiction to review "any judgment regarding the granting of relief under section . . . 245 [8 U.S.C. § 1255]," 8 U.S.C. § 1252(a)(2)(B)(i), or "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" 8 U.S.C. § 1252(a)(2)(B)(ii). Thus, if the pace of adjudication is a "judgment regarding the granting of relief under section 245" or is within the Attorney General's discretion "under the subchapter," the Court does not have subject matter jurisdiction.

The ultimate decision whether or not to adjust an alien's status under INA § 245 is undisputedly within the discretion of the Attorney General. "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a).

But that does not mean that all actions that call for some discretion or that have any relation to adjustment of status are unreviewable. INA § 242's jurisdictionstripping language is more precise than that.

8 U.S.C. § 1252(a)(2)(B)(I) applies to the ultimate decision whether or not to grant relief. In passing it, Congress repeatedly noted the increasing number of aliens declared removable by the agency but never removed. (See S. REP. NO. 104–249, pt. 1 1996); *see also* H.R. REP. No. 104–469, pt. 1 (1996) ("an important subset of the annual growth in the number of illegal aliens as many as [sic] 50,000 or

more consists of those who have been ordered deported, but are not actually removed.") Thus, the original purpose of this subparagraph was to ensure removal of those individuals adjudicated removable by making the Attorney General's decision final as to relief by adjustment of status.[1] It was not to immunize the government from all claims based on conduct—even clear wrongdoing—that happens to relate to the adjustment of status process. *See e.g. Osunsanya v. USCIS*, 2007 WL 484864, **3–4, 2007 U.S. Dist. LEXIS 9474 at *11–15 (D.Mass. Feb. 12, 2007) (Zobel, J.) (district court had jurisdiction to review claim that USCIS agents violated USCIS regulations during processing of plaintiff's application for adjustment of status, which was ultimately denied). Indeed, the title of 8 U.S.C. § 1252(a)(2)(B), *"Denials* of Discretionary Relief," (emphasis supplied), points clearly to its subject matter. The finality of the Attorney General's decision is not at issue in this case; plaintiffs do not seek review of any denial of adjustment of status. In fact, they seek to *accelerate* the process of adjudication, not slow it down.

The second jurisdiction-stripping provision potentially at issue here, 8 U.S.C. § 1252(a)(2)(B)(ii), applies only to those actions or decisions "the authority for which *is specified under this subchapter to* be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id.* (emphasis supplied). As to which decisions are "discretionary" for the purposes of this subparagraph, the Third Circuit has noted that the language of that provision applies "not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the ac-

tion is in the Attorney General's discretion." *Alaka v. AG of the United States*, 456 F.3d 88, 95 (3d Cir.2006), *cited by Koren v. Chertoff*, 2007 WL 1431948, *3, 2007 U.S. Dist. LEXIS 35128 at *10 (D.Conn.2007). Likewise, the Ninth Circuit noted that 8 U.S.C. § 1252(a)(2)(B)(ii)

> refers not to 'discretionary decisions,' as did the transitional rules [of the Illegal Immigration Reform and Immigrant Responsibility Act], but to acts the authority for which is specified under the INA to be discretionary. Following the 'well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words,' we must assume that this difference in language is legally significant. If Congress had intended to withdraw jurisdiction over all 'discretionary decisions,' it would have used the same language found in the transitional rules.

*Spencer Enters. v. United States*, 345 F.3d 683, 689 (9th Cir.2003) (quoting *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003)). The Fifth Circuit agreed:

> One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. Such a reading is mistaken, however, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review the discretionary authority that is specified in the statute. As we have repeatedly noted, we observe again that the language of § 1252(a)(2)(B)(ii) is thoroughly pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised under this statute,' but specifically to 'authority

---

1. Subparagraph (I) was amended in 2005 to make it clear that Congress intended this finality to apply outside of the removal context as well. 109 P.L. 13; 119 Stat. 231, 305 (2005).

for which is specified under this subchapter to be in the discretion of the Attorney General.

*Ahmed v. Gonzales,* 447 F.3d 433, 436 (5th Cir.2006) (internal citations omitted). The Second, Sixth and Eleventh Circuits have all reached the same conclusion, holding that, though an Immigration Judge's decision not to grant a ·continuance is discretionary and may be considered an act of the Attorney General, it is not "specified under [the relevant] subchapter to be in the discretion of the Attorney General." *Sanusi v. Gonzales,* 445 F.3d 193, 198–99 (2d Cir.2006); *see also Abu–Khaliel v. Gonzales,* 436 F.3d 627, 633–34 (6th Cir. 2006); *Zafar v. Att'y Gen.,* 426 F.3d 1330, 1334–35 (11th Cir.2005).

 Thus, it is not enough that an action in practice involves some discretion; rather, to be immune from judicial review, it must be specified as discretionary in the INA. "The subchapter at issue specifies only that it is within the discretion of the Attorney General to adjust one's ·status; it does not address, much less specify any discretion associated with, the pace of application processing." *Duan v. Zamberry,* 2007 WL 626116, *2, 2007 U.S. Dist. LEX-

IS 12697 at *6 (W.D.Pa. Feb. 23, 2007); *see also Elmalky v. Upchurch,* 2007 WL 944330, **4–5, 2007 U.S. Dist. LEXIS 22353 at *14–17 (N.D.Tex. March 28, 2007); *Salehian v. Novak,* 2006 WL 3041109, 2006 U.S. Dist. LEXIS 77028 (D.Conn.2006).[2] I am aware that some courts have reached a different conclusion. *Global Export/Import Link, Inc. v. United States Bureau of Citizenship & Immigration Servs.,* 423 F.Supp.2d 703 (E.D.Mich. 2006); *Yerkovich v. Ashcroft,* 381 F.3d 990 (10th Cir.2004); *Safadi v. Howard,* 466 F.Supp.2d 696, 699 (E.D.Va.2006). Nevertheless, I am not persuaded that Congress, despite its careful wording of the jurisdiction-stripping language, intended to vaguely immunize all conduct as long as the agent· can be said to have exercised some discretion in the performance of it, or it can be related to a discretionary action. *Accord Osunsanya,* 2007 WL 484864, **3–4; 2007 U.S. Dist. LEXIS 9474 at *11–15. The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary,

**2.** Contrast *Aquilar v. United States Immigration & Customs Enforcement,* 490 F.Supp.2d 42, 47 (D.Mass.2007) (Stearns, J.). In *Aquilar,* Judge Stearns considered two sections of the INA as specifying discretionary authority in the Attorney General for the purposes of jurisdiction-stripping: 8 U.S.C. § 1226, which governs the apprehension and detention of aliens prior to their being determined removable, and which expressly states "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review"; and 8 U.S.C. § 1231(g)(1), which expressly provides that "[t]he Attorney General shall arrange for appropriate places of detention." Though I do not necessarily agree that the latter language specifies the kind of decision for which Congress intended to bar review in § 242, both provisions are at least express specifications of authority. In

contrast, nothing in the INA enumerates as "in the discretion of the Attorney General" the multitude of small decisions that together have resulted in delayed adjudication here. Of course, 8 U.S.C. § 1255(a)'s express grant of discretionary authority to grant or deny adjustment of status implies the process and its sub-decisions. But *all* of the day to day activities of the USCIS are implied by the grants of authority to ultimately adjudicate immigration matters. The distinction· between express and implicit is exactly the line Congress drew when it replaced the simple phrase "discretionary decisions" that it had used in the transitional rules with the much more cumbersome "decisions the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

the *pacing* of such a decision is not so specified.

## VI. WHETHER THE APA IMPOSES A DUTY ON AGENCIES TO ADJUDICATE WITHIN A REASONABLE TIME

That INA § 242 does not bar review is only the first part of the jurisdictional analysis. The Court still cannot reach the merits of plaintiffs' complaint unless there is a positive basis for subject matter jurisdiction.

Plaintiffs argue that the Court has jurisdiction under the federal question statute, 28 U.S.C. § 1331, to decide whether the government has violated the APA's requirement that "[w]ith due regard for the convenience and necessity of the parties or their representatives *and within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis supplied). Defendants argue that the "reasonable time" requirement is too vague to be the basis for judicial review.

Numerous courts have found the provision definite enough to support a cause of action: *Loo v. Ridge*, 2007 WL 813000, *1, 2007 U.S. Dist. LEXIS 17822 at **3–4 (E.D.N.Y. March 14, 2007); *Harriott v. Ashcroft*, 277 F.Supp.2d 538 (E.D.Pa.2003); *Nyaga v. Ashcroft*, 186 F.Supp.2d 1244 (N.D.Ga.2002); *Paunescu v. INS*, 76 F.Supp.2d 896, 902 (N.D.Ill.1999) (two-year delay in processing immigrant visa "was not a 'decision,' let alone a discretionary call. Plaintiffs do not ask this court to 'review' a governmental action, but to examine and rectify a gross inaction."); *Yu v. Brown*, 36 F.Supp.2d 922, 935 (D.N.M. 1999); *Hu v. Reno*, 2000 WL 425174, *4, 2000 U.S. Dist. Lexis 5030, *9 (N.D.Tex. 2000) ("defendants have a clear duty to process plaintiffs' applications in a timely manner."); *Singh v. Still*, 470 F.Supp.2d 1064, 1071 (N.D.Ca., 2007) ("The critical question for the Court in deciding these motions is whether there has been unreasonable delay" in processing adjustment of status application); *accord Chaudry v. Chertoff*, 2006 WL 2670051, 2006 U.S. Dist. LEXIS 66842 (D.Minn. Sept. 18, 2006) (holding that 5 U.S.C. § 555(b) issue was not properly raised, but considering in dicta whether delay was reasonable).

Further, 5 U.S.C. § 706(1) requires that reviewing courts "compel agency action unlawfully withheld or unreasonably delayed." The government points to the Supreme Court's holding in *Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) that "the only agency action that can be compelled under the APA is action legally required." The government argues that adjudication of an application for adjustment of status is not "legally required," because it is within the Attorney General's discretion. But while it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all. *See Hu*, 2000 WL 425174, *3, 2000 U.S. Dist. Lexis 5030, *9 ("Although the INS is vested with broad discretion in making the ultimate decision whether to grant an application for adjustment to permanent residence status, it has a nondiscretionary duty to process the application."); *Salehian*, 2006 WL 3041109, *3, 2006 U.S. Dist. Lexis at *9 ("While it is true that the ultimate adjustment of status decision is 'entirely discretionary,' this Court has noted that the INS does not have discretion as to whether to adjudicate an adjustment of status application."); *Loo*, 2007 WL 813000, *1, 2007 U.S. Dist. LEXIS 17822 at **3–4 ("numerous courts have found that immigration authorities have a nondiscretionary duty to adjudicate applications"); *Am. Acad. of Religion v. Chertoff*,

463 F.Supp.2d 400, 2006 WL 1751254, *16 (S.D.N.Y.2006) (holding that the regulation stating that consular officials either "issue or refuse" a completed visa creates a duty to adjudicate); *Dabone v. Thornburgh,* 734 F.Supp. 195, 200 (E.D.Pa.1990) (holding the Board of Immigration Appeals owed plaintiff a duty to adjudicate his motion to reopen an exclusion proceeding); *Yu,* 36 F.Supp.2d at 931–32 (holding that the INS owed plaintiff a duty to process her application for a change of status to permanent resident); *but see Rogatch v. Chertoff,* 2007 WL 1160358, **1–2, 2007 U.S. Dist. LEXIS 28450 at *4–5 (D.R.I. April 17, 2007) (holding, without discussion of arguments, that 5 U.S.C. § 706(1) does not provide jurisdiction to compel action when a delay has been "unreasonable."). A grant of adjustment of status is not "legally required," but adjudication of the application one way or the other certainly is. Plaintiffs do not seek to compel the former, only the latter.

The government argues that neither 5 U.S.C. § 555(b) nor 5 U.S.C. § 706(1) can apply here because there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). First, *Heckler* is inapposite here. In *Heckler,* death row inmates sought to compel the Food and Drug Administration ("FDA") to review the drugs that were to be used in lethal injections. The Supreme Court found that Congress had given the FDA "complete discretion" to decide what drugs to review, and that discretion had never been meaningfully qualified. Thus, as in *So. Utah Wilderness Alliance,* there was no "legally required" action to compel.

Likewise, in *Keane v. Chertoff,* 419 F.Supp.2d 597, 599–601 (S.D.N.Y.2006), another case cited by defendants, the plaintiff sought, not to compel adjudication within a reasonable time, but to schedule a face-to-face interview, which was not required under any statute or regulation. As in *So. Utah* and *Heckler,* since the agency had absolutely no duty to interview plaintiff as part of the adjudication process, the court refused to compel it. Unlike those cases, the government here does have a duty to adjudicate plaintiffs' application for adjustment of status.

While "reasonable time" is not a clear standard, I cannot simply ignore it as meaningless. *See Imperial Production Corp. v. Sweetwater,* 210 F.2d 917, 920 (5th Cir.1954) ("The legislature is never presumed to have done a vain thing in the enactment of a statute."); *Citizens Bank v. Strumpf,* 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).

Nor does an agency have sole discretion to define what is a reasonable time under the APA, which would render meaningless § 706(1)'s clearly mandatory language that the "reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." Notably, Congress did not say "agency action unlawfully withheld or delayed," as it could have if it meant to allow judicial review only where agency delay violated a fixed deadline set out in a separate statute or regulation. The deliberate insertion of the word "unreasonably" contemplates that reviewing courts will delve into the question of what is "reasonable" in the pacing of adjudication.

Nor are reviews of the pacing of agency action judicially unmanageable. *Accord Zadvydas v. Davis,* 533 U.S. 678, 699–700, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In *Zadvydas,* the Supreme Court grappled with the question of how to measure "reasonableness" in evaluating delays in removal of detained aliens. Of course the context of this case is different from that case, but the task is analogous: operationalizing the vague standard of "reasonable"

**156**

delay. I follow the Court's example in *Zadvydas* and "measure reasonableness primarily in terms of the statute's basic purpose." *Id.* The language of 5 U.S.C. § 555(b) gives its purpose as "due regard for the convenience and necessity of the parties." Further, that provision is part of the APA, one of whose basic purposes was to provide minimum standards for agency performance. Attorney General's Manual on the Administrative Procedures Act 9 (1946). As a result, there is a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). It would be contrary to these purposes to interpret 5 U.S.C. § 555(b) and 5 U.S.C. § 706(1) as merely hortatory.

Further, courts have noted that to defer to agencies on pace of adjudication would be effectively to lift the duty to adjudicate applications altogether. *See Agbemaple v. INS,* 1998 WL 292441, *2, 1998 U.S. Dist. LEXIS 7953 *6 (E.D.Ill., 1998) ("Congress could not have intended to authorize potentially interminable delays. We hold that as a matter of law, [plaintiff] is entitled to a decision [on his immigrant visa application] within a reasonable time, and that it is within the power of the court to order such an adjudication."); *Salehian,* 2006 WL 3041109, *2, 2006 U.S. Dist. LEXIS 77028 *8 ("the Government simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.").

Defendants argue that some of the "reasonable time" cases finding that there is subject matter jurisdiction predate the jurisdiction-stripping amendment of § 242. But the fact that these cases precede the amendment only means that I must presume that Congress was aware of them

when it used the word "discretion" in connection with specified authority under 8 U.S.C. § 1252(2)(B)(ii). *See McNary v. Haitian Refugee Ctr.,* 498 U.S. 479, 496, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (Congress presumably legislates with full awareness of courts' prior treatment of the law, including "our well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action"). Despite Congress's awareness that a significant number of courts did not consider pacing of adjudication to be completely discretionary, the jurisdiction-stripping amendment to the INA was written to refer only to those actions "specified" as discretionary.

Thus, I conclude that the Court has subject matter jurisdiction to consider whether the delay in adjudicating Tang's application has been unreasonable.

## VII. *WHETHER THE DELAY IN THIS CASE IS UNREASONABLE*

Defendants argue that there is no judicially manageable standard by which the Court can determine when a delay is unreasonable under 5 U.S.C. §§ 555(b) or 706(1). It is true that there is no clear benchmark either in the INA or the APA, but, as discussed above, this does not render 5 U.S.C. §§ 555(b) or 706(1) null, nor has it stopped courts from finding delays unreasonable in the past. Thus, the Court must construe the statute, even if Congress has not been kind enough to make this an easy task.

In response to the Court's request for further briefing, the government has provided a helpful description of its name-check process. Aff. of Michael A. Cannon. In 1995, the FBI converted its extensive records into one computerized Automated Case Support System ("ACS"), including indices of 98.4 million records that can be searched by proper name. *Id.* at ¶¶ 9–11.

68% of name-checks return a "No Record" response by electronically searching these indices, and therefore can be concluded less than 72 hours after they begin. *Id.* at ¶ 13. Another 22%, for reasons not explained by the government, require an additional check that may take 30–60 days to return a "No Record" response. *Id.* at ¶ 14. The remaining 10% are "idents," meaning that they return an indication that the FBI has a record on the individual that must be retrieved from paper files and further reviewed. *Id.* at ¶¶ 12, 14–15.

Robert J. Garrity, Jr., Acting Assistant Director of the FBI's Records Management Division, describes a "No Record" response as follows:

> A 'No Record' indicates that the FBI's Central Records System contains no identifiable information regarding this individual. By agreement with State, partially due to our concern about the time factors in approving most visa requests a 'No Record' equates to a No Objection to the issuance of a visa. The substantive investigative divisions in the FBI … do not review visa requests where there is no record of the individual.

Robert J. Garrity Jr., Acting Assistant Director, Records Management Division, FBI, Testimony Before House Committee on Government Reform (June 10, 2003) (transcript available at <www.fbi.gov/congress/congress03/garrity071003.htm>).

As discussed above, the FBI has already performed a name check on Tang in response to his FOIPA request, and returned a "No Record" response. Nevertheless, the delay here has been nearly four years (if measured from the filing of plaintiff's application on June 23, 2003) or two years and nine months (if measured from plaintiff's fingerprinting on August

23, 2004, at which point the application was complete except for the still-pending background check). Both of these numbers are larger than the delays found unreasonable by other courts. *Paunescu,* 76 F.Supp.2d at 902 (2 years); *Yu,* 36 F.Supp.2d at 935 (2.5 years); *Agbemaple,* 1998 WL 292441, *2, 1998 U.S. Dist. LEXIS 7953 at *7 (20 months); *Hu,* 2000 WL 425174, *4, 2000 U.S. Dist. Lexis 5030 at *14 (2.5 years); *Salehian,* 2006 WL 3041109, *1, 2006 U.S. Dist. LEXIS 77028 at *4 (2 years).

Further, plaintiffs offer various numbers quoted to them during the application process as benchmarks for what is "reasonable" in processing an application for adjustment of status. The receipt sent to plaintiffs upon filing of the application gave an estimate of 365 to 540 days for processing. Ex. A–1 & A–2 to Complaint. When plaintiffs inquired about the status of the application on October 20, 2005 (after 540 days had elapsed), they were told to check back in 6 months. Ex. C–6. When they inquired on May 27, 2006, they were told again to check back in 6 months. Ex. C–2 to Complaint. Defendants have also recently informed the public that the wait time for adjustment applications as of September 30, 2006, was 7 months.[3] While none of these numbers are binding on defendants, they do suggest that Tang's application has taken significantly longer than others.

■ It is not necessary in this case to locate the exact position of the boundary between reasonable and unreasonable time for adjudication of permanent residency applications. Wherever that line may fall, this case is far to the "unreasonable" side. It has taken over four years and counting for the government simply to acknowledge what is already known to them, to plain-

---

3. https://egov.immigratio n.gov/cris/jsps/Processtimes.jsp?SeviceCen ter=VSC (cited by plaintiff's memorandum at 9) (document # 14).

tiffs, and to the Court: that there are no FBI records pertaining to Tang.

Defendants also argue that, because adjustment of status relates to national security, they are due deference in terms of the timing of their processes. Quoting *Safadi v. Howard,* 466 F.Supp.2d 696, 701 (E.D.Va.2006) ("[I]n this post–9/11 world USCIS must carefully and thoroughly investigate adjustment applications to ensure they are not granted without the appropriate good cause. Our national security requires that caution and thoroughness in these matters not be sacrificed for the purpose of expediency.") As plaintiffs point out, they are already living and working in the United States while the application is pending. Further, if the government adjusts Tang's status in error due to haste (if performing a 72–hour check within four years can be called "haste"), the INA allows it to rescind the status and initiate removal proceedings on the basis that he was inadmissible at the time of admission. 8 U.S.C. §§ 1227(a)(1)(A) & 1256(a).

Finally, defendants argue that delays in adjudication are due to a high volume of applications and scarce resources, and that this situation is best remedied by the political branches. I agree. If the agencies involved find themselves short of the resources necessary to fulfill their statutory duty to act within a reasonable time, that is a policy crisis. But it is not plaintiffs who ask the Court to take on the burden of remedying this crisis. Rather, it is defendants who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on immigrant plaintiffs. I will follow the law and leave it for the political branches to fix the system.

## VIII. *CONCLUSION*

For the reasons above, Defendants' Motion to Dismiss (document # 9) is hereby DENIED. Defendants are **ORDERED** to adjudicate Tang's application for adjustment of status to permanent resident. **Defendants shall file an Affidavit demonstrating compliance with this Order on or before August 6, 2007.**

**SO ORDERED.**