Benamar TOUARSI, Plaintiff,

v.

Robert S. MUELLER, Director Federal Bureau of Investigations, Gerard Heinauer, Director Nebraska Service Center, USCIS, Emilio T. Gonzalez, Director, USCIS, Michael Chertoff, Secretary Department of Homeland Security, Alberto Gonzalez, Attorney General, Department of Justice, Defendants.

Civil Action No. 07–10208–GAO.

United States District Court,
D. Massachusetts.

March 17, 2008.

---

Carlos E. Estrada, Boston, MA, for Plaintiff.

Rayford A. Farquhar, United States Attorney's Office, Boston, MA, for Defendants.

## OPINION AND ORDER

O'TOOLE, District Judge.

The plaintiff, Benamar Touarsi, a citizen of Algeria, was granted political asylum in the United States in 2002. In 2003, he applied to the Immigration and Naturalization Service, now United States Citizenship and Immigration Services ("USCIS"), for an adjustment of his status to that of permanent resident. USCIS has not yet acted on his application. By this action, Touarsi seeks "to compel Defendants to process the necessary background checks and adjudicate his application for Adjustment of Status to Permanent Resident (Form I-485)." (Compl. 2 ("Introduc-

tion").) The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction.

Touarsi appears to plead three distinct bases for this Court's jurisdiction: (1) 28 U.S.C. § 1361, authorizing jurisdiction over actions in the nature of mandamus; (2) 28 U.S.C. §§ 2201 and 2202, authorizing declaratory judgments; and (3) 28 U.S.C. § 1331, authorizing jurisdiction over civil actions arising under the laws of the United States, in conjunction with provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.

The Declaratory Judgment Act affords a particular remedy; it is not an independent basis for jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Whether the other bases are sufficient is a question that has divided those federal courts that have considered it.

As a general matter, the APA provides that a person "aggrieved by agency action ... is entitled to judicial review thereof," 5 U.S.C. § 702, "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." Id. § 701(a). Touarsi's grievance is that USCIS has not acted upon his application for adjustment of status, though it has been pending since 2003. This failure to act, he says, is contrary to the agency's obligation, arising under 5 U.S.C. § 555(b), to "conclude [the] matter" "within a reasonable time." A reviewing court is expressly authorized under the APA to "compel agency action ... unreasonably delayed" so long as the exceptions in § 701 do not apply. Id. § 706(1). That is the relief that Touarsi seeks: an order that the agency "conclude

[the] matter" by taking action on his application.[1]

Whether to grant an application such as Touarsi's for adjustment of status to permanent residency is committed to the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1255(a).[2] The Secretary's decision to grant or deny an application for adjustment of status is not subject to judicial review, under the APA or otherwise. *Id.* § 1252(a)(2)(B)(I). Touarsi concedes as much, but he contends that the obligation to act one way or the other on the application within a reasonable time is not a matter of discretion, but is rather a non-discretionary duty imposed by § 555(b) of the APA. The Secretary's failure to have acted on the application that has been pending since 2003, Touarsi says, amounts to a failure to perform that non-discretionary duty. Consequently, jurisdiction exists at least under the APA and 28 U.S.C. § 1331, if not also under the mandamus statute, 28 U.S.C. § 1361, over his suit to compel the Secretary (or other proper defendant) to make a decision on the application. Some courts considering similar claims have agreed with this argument. *See, e.g., Aslam v. Mukasey,* 531 F.Supp.2d 736, 743 (E.D.Va.2008) ("Accordingly, the Court concludes that CIS has a legal obligation to adjudicate Aslam's petition within a reasonable period of time."); *Tang v. Chertoff,* 493 F.Supp.2d 148, 153–54 (D.Mass.2007)

("Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified.").

The defendants, on the other hand, contend that the Secretary's broad discretion to grant or deny applications (free from any judicial review) conferred by § 1255(a) necessarily includes the procedural discretion to determine how and when the substantive discretionary decision will be made. Accordingly, they say, the decisions and actions (including inaction) of the Secretary taken with regard to the processing of status adjustment applications is a matter removed from possible judicial review by § 1252(a)(2)(B)(ii).[3] Some courts have agreed with this argument. *See, e.g., Li v. Chertoff,* 482 F.Supp.2d 1172, 1179 (S.D.Cal.2007) ("Furthermore, the Court concludes that 8 U.S.C. 1252(a)(2)(B)(ii), which precludes district courts from reviewing any discretionary act of USCIS, precludes this Court from reviewing whether Defendants have adjudicated Plaintiff's I–485 application within a reasonable period of time under the APA."); *Tao Luo v. Keisler,* 521 F.Supp.2d 72, 74 (D.D.C.2007) (agreeing with *Safadi v. Howard,* 466 F.Supp.2d 696, 699 (E.D.Va.2006) that the term "action" as used in § 1252(a)(2)(B)(ii) includes any act within the adjustment of status process, such as pace).

---

**1.** "Agency action" includes the "failure to act." 5 U.S.C. §§ 551(13), 701(b)(2). Thus, the failure of USCIS to act on Touarsi's application within a reasonable time may qualify as "agency action" subject to review.

**2.** The text of the statute confers the discretion on the Attorney General, but his authority in this regard has been transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 271(b)(5), 557.

**3.** Section 1252(a)(2)(B)(ii) provides in part, as relevant to this case, as follows:

Notwithstanding any other provision of law (statutory or nonstatutory), including ... sections 1361 and 1651 of [Title 28], ... no court shall have jurisdiction to review— any other decision or action of the ... Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the ... Secretary....

And so the controversy, at base, is whether § 1255(a)'s grant of discretionary power to the Secretary to adjust an alien's status to permanent resident is limited to the substantive grant or denial of the adjustment, as the first group of courts have held, or whether it includes the discretion to determine how and when to make the substantive decision, as the second group have held. If the "pace" of processing is included as being within the scope of § 1255(a)'s grant of discretion, then of course there would be no reviewability under the APA because both exceptions in § 701(a) would apply. This is what § 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the [Secretary], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

It is plain that the text of the statute does not provide a direct answer to the question. On the one hand, it does not explicitly limit the discretion granted the Secretary to his substantive decision on the application, nor expressly exclude from the scope of the discretion granted either procedural determinations in general or the pace of decision-making in particular. Those courts that have found such a partition and limitation of the Secretary's discretion have apparently done so by starting from the premise that discretion to make judgments about the "pace" of decision-making is sufficiently a separate matter from discretion as to the "substance" of the decision-making that it can be inferred

that if Congress intended to include "pace" within the scope of discretion granted, it would have said so specifically. *See, e.g., Tang,* 493 F.Supp.2d at 153–54. They have then concluded that since discretion to govern the pace of decision-making is not specifically mentioned in § 1255(a), Congress did not intend to confer it on the Secretary.

The problem with this approach is that it rather begs the question. If one starts from the premise that procedural discretion must be expressly mentioned in order to be conferred, then it obviously follows that where it has not been expressly mentioned, it has not been conferred. If one starts from a different premise, that, absent a contrary indication, discretion to resolve substantive issues implicitly includes discretion as to procedures to manage the decision-making process, then a different conclusion follows. In that case, the statute's omission to mention procedural discretion specifically would only mean that it was unnecessary or redundant to do so, not that such discretion was being withheld.

It is not clear why those courts that have concluded that discretion as to the "pace" of decision-making is not included within § 1255(a)'s grant of discretion have started from the premise they have. One possibility is that they have concluded that the best way to harmonize § 1255(a)'s grant of discretion with the requirement under § 555(b) of the APA that "matters" before an agency be concluded "within a reasonable time" is to hold that the latter requirement endures, notwithstanding the generality of the grant of discretion, in the absence of a specific, articulated statement that it should not. But that reasoning likewise begs the question. Another not uncommon way to "harmonize" potentially conflicting statutory directives would be to

regard the later and more specific provision as superseding *pro tanto* the prior and more general one. *See* 2B Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 51.05 (6th ed. 2000). Again, if one begins with the premise that harmonizing the statutory provisions must permit § 555(b)'s command to survive, then it will. If one adopts the premise that it need not survive, it may not. The question whether § 555(b) limits the Secretary's procedural discretion is the one sought to be answered; assuming that it does not answer the question, but avoids it by preempting it.

■ When the text of the statute does not contain a clear and express answer, standard interpretative praxis calls for consideration of whatever guidance may emerge from the broader statutory context and from what can properly be understood as the purpose Congress had in mind in enacting the particular provision at issue. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) ("Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."). Here, there are aspects of the statutory text that actually point away from the assumption made by those courts that have found no discretion as to "pace."

First, under § 1255(a), the Secretary is given discretion to adjust "under such regulations as he may prescribe." That is a straightforward invitation to the Secretary to determine by regulation, among other matters, the process by which adjustment applications will be administratively handled. Indeed, regulations have been promulgated, and they do deal with matters of procedure. *See* 8 C.F.R. Part 245. The regulations do not address the "pace" of the Secretary's adjudication of adjustment applications, but that is beside the point. What is important is that they could if the Secretary wanted them to. The authority—the discretion—to adopt pace-governing regulations, among others, is clearly granted to the Secretary by § 1255(a)'s permission to prescribe regulations.[4]

Furthermore, it is worth noting that the text of § 1255(a) does limit the Secretary's discretion in other ways. It enumerates three conditions on the discretion to adjust an alien's status: an adjustment may only be made on application by the alien, the alien must be eligible for an immigrant visa and for admission as a permanent resident, and there must be a visa immediately available at the time the application is filed. Where Congress has taken care to articulate specific limitations on the discretion granted, one should be cautious about inferring that it also intended other unarticulated limitations.

More broadly, it is hard to ignore unmistakable congressional efforts increasingly to insulate executive decision-making in the area of immigration from judicial review. In recent years, Congress has repeatedly expressed an intention to restrict the federal judiciary's role in the immigration arena by amending the Immigration and Nationality Act ("INA") to strip the federal courts of jurisdiction over various immigration-related matters. *See* Real ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231; Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of

---

4. It is also beside the point whether the Secretary acts appropriately in processing applications without rules about how long the processing takes. That might be an appropriate question for a court reviewing the Secretary's action under the APA. The question here is whether such review is permitted, not what its outcome should be.

1996, Pub.L. No. 104–208, § 306(a)(2), 110 Stat. 3009–546, 3009–607.

For instance, after the Supreme Court in *INS v. St. Cyr* held that the IIRIRA's jurisdictional stripping provisions did not sufficiently express an intent by Congress to eliminate use of the writ of habeas corpus as a means for obtaining judicial review of immigration-related claims, 533 U.S. 289, 312–13, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), in what can reasonably be interpreted as a direct response to *St. Cyr*, Congress again amended the INA through the REAL ID Act, making explicit its intention to foreclose review of removal decisions by means of the writ of habeas corpus, whether under "section 2241 of Title 28, or any other habeas corpus provision," as well and sections 1361 and 1651 of Title 28. REAL ID, Pub.L. No. 109–13, § 106(a)(1)(A)(i)-(ii), 119 Stat. 231, 310.

In short, Congress has not been reticent about its intention to reduce or eliminate formerly existing means of judicial review of agency decisions relating to immigration matters. This history does not directly answer the question presented here, of course, but it certainly does not lend support to the proposition that Congress intended § 1255(a)'s grant of discretion to be parsed in a way that would preserve judicial supervision over the pace of the Secretary's processing of status adjustment petitions, while giving him unreviewable discretion over the substantive decision itself.

This is obviously a matter about which reasonable minds can and do differ. For the reasons set forth above I conclude that the discretion granted to the Secretary by § 1255(a) to adjust status includes the discretion to determine matters concerning the processing of applications, including the discretion to determine when the Secretary has determined that he has suffi-

cient, current, reliable information upon which to base his ultimate decision.

Because the Secretary's authority to manage the adjustment of status application process, committed to his discretion by § 1255(a), falls within the scope of § 1252(a)(2)(B)(ii), judicial review of the "pace" at which he does so is precluded. "The presumption favoring judicial review of administrative action is just that—a presumption.... That presumption does not control in cases such as this one, however, since the congressional intent to preclude judicial review is 'fairly discernible' in the detail of the legislative scheme." *Block*, 467 U.S. at 349, 351, 104 S.Ct. 2450. The mechanism for judicial review of agency action set forth in the APA is not available when either of two conditions exists: a statute precludes judicial review, or the agency action is committed to agency discretion by law. 5 U.S.C. § 701(a). Both conditions are satisfied here because § 1252(a)(2)(B)(ii) precludes review of the discretionary decisions and actions of the Secretary taken in his processing of applications for adjustment of status.

Accordingly, this Court lacks jurisdiction to enter an order under either the mandamus statute, 28 U.S.C. § 1361, or the APA, 5 U.S.C. § 706(1), to compel the Secretary to act on the pending application. The defendants' motion to dismiss the complaint for want of subject matter jurisdiction must be, and it is, GRANTED. The complaint is DISMISSED.

It is SO ORDERED.