Abd ALKEYLANI, et al., Plaintiffs,

v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,
Defendants.

Case No. 3:07–CV–504 (PCD).

United States District Court,
D. Connecticut.

Sept. 20, 2007.

Justin Conlon, Law Office of Michael Boyle, North Haven, CT, for Plaintiffs.

William M. Brown, Jr., U.S. Attorney's Office, New Haven, CT, for Defendants.

## MEMORANDUM OF LAW RE: DEFENDANTS' MOTION TO DISMISS

PETER C. DORSEY, District Judge.

Plaintiffs Abd Alkeylani, Yasmeen Joonas Keylani, and Judy Keylani have been awaiting adjudication of their Applications to Adjust Permanent Resident Status, Forms I–485 ("I–485 applications" or "adjustment applications"), since August 2004. Plaintiffs now bring this action seeking mandamus and injunctive relief for the alleged failure of Defendants Michael Chertoff, Secretary, Department of Homeland Security, Alberto Gonzales, Attorney General, Emilio Gonzalez, Director, U.S. Citizenship and Immigration Service ("USCIS"), Paul Novak, Director, USCIS Vermont Service Center, Frances Holmes, District Manager for USCIS District 2, and Robert S. Mueller, Director, Federal Bureau of Investigation, to adjudicate their pending I–485 applications. Defendants now move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Complaint. Following the September 13, 2007 hearing to show cause why the relief requested by Plaintiffs should not be granted, the Court entered an order denying Defendants' Motion to Dismiss [Doc. No. 18]. The following memorandum supports the decision made by the Court at the September 13th hearing.

## I. BACKGROUND

Plaintiff Abd Alkeylani is a native and citizen of Syria who resides in Mansfield Center, Connecticut. (Compl. ¶ 4.) Plaintiff Yasmeen Joonas Keylani, Plaintiff Alkeylani's wife, is a native and citizen of the United Kingdom who resides in Coventry, Connecticut. (Id. ¶ 5.) Plaintiff Judy Keylani is the daughter of Plaintiffs Alkeylani and Yasmeen Keylani and also resides in Coventry, Connecticut. (Id. ¶ 6.) On May 21, 2004, USCIS received Plaintiff Alkeylani's I–40 Immigration Petition for Alien Worker, sponsored by his employer. (Id. ¶ 14.) On August 4, 2004, Plaintiffs filed their I–485 applications in compliance with 8 C.F.R. § 245.1, which was amended to allow concurrent filing of an I–485 adjustment applications with an I–140 petition. (Id. ¶ 15.) On July 20, 2005, USCIS approved Mr. Alkeylani's I–140 petition. (Id., Ex. A.) However, no significant action has been taken on Plaintiffs' I–485 applications during the three years in which they have been pending. (Id. ¶ 16.) Plaintiffs were fingerprinted for their I–485s over two years ago (id. ¶ 17), but they have still not been interviewed and the FBI still has not completed the name check process for their applications. (Id. ¶ 16.)

Plaintiffs began making inquiries into the statuses of their pending I–485 applications nearly two years ago. In late 2005, Plaintiffs requested the help of then-Congressman Rob Simmons, whose office made an inquiry on Plaintiffs' behalf with the Department of Homeland Security. In January, 2006, Representative Simmons's office told Plaintiffs that their cases were pending due to the background check process and could not be expedited. (Compl. ¶ 18.) On June 2, 2006, Mr. Alkeylani made an inquiry about his petition via USCIS's National Customer Service Center ("NCSC") hotline. (Id. ¶ 19.) He received no response from USCIS until December 2006, when he received a letter from USCIS which did not specify if or why Plaintiffs' case was still pending. (Id.) On June 18, 2005, Mr. Alkeylani made another inquiry via the NCSC hotline. (Id. ¶ 20.) USCIS responded more promptly to this inquiry, but this time indicated that Plaintiffs' 1–485 applications were delayed indefinitely due to "security checks." (Id., Ex. G.) On March 2, 2007, Plaintiffs received a letter from Defendant

Paul Novak stating that the processing of Plaintiffs' application was delayed due to pending security checks, and that Plaintiffs should inquire again in six months if no decision was received. (*Id.* ¶ 21, Ex. H.)

On April 3, 2007, Plaintiffs filed their Complaint in this Court, seeking an order directing Defendants to fully adjudicate Plaintiffs' I–485 applications within thirty days and granting attorney's fees and costs and any other further relief as the Court deems proper under the circumstances. The Court issued an order to show cause within 30 days as to why it should not grant the relief requested by Plaintiff, and the hearing on the Court's order was postponed until September 13, 2007, on the consent of all parties. On September 13th, Defendants moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

## II. STANDARD OF REVIEW

■ A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed.R.Civ.P. 12(b)(1); *accord Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). Plaintiffs, as the party asserting subject matter jurisdiction, have the burden of establishing by a preponderance of the evidence that it exists, *id.* at 638, and the Court should not draw argumentative inferences in its favor. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l,* 968 F.2d 196, 198 (2d Cir.1992). Unlike with a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (*citing Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d

1006, 1011 (2d Cir.1986)); *see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"). A court must "look to the substance of the allegations to determine jurisdiction." *Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1019 (2d Cir.1993).

The function of a motion to dismiss pursuant to Rule 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir. 1984) (citation omitted). Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true, draw inferences therefrom in the light most favorable to the plaintiff, and construe the complaint liberally. *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001). The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* — U.S. —, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007). Although detailed factual allegations are not required, a plaintiff must provide the grounds of her entitlement to relief beyond mere "labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. In ruling on a motion under Rule 12(b)(6), the Court may consider only the allegations made in the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, and any facts of which judicial notice may be taken. *See Newman & Schwartz v. Asplundh Tree Expert Co.,*

102 F.3d 660, 662 (2d Cir.1996); *Brass v. Am. Film Techn., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

Where, as here, a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir.1990).

## III. DISCUSSION

### A. 8 U.S.C. § 1252(a)(2)(B)(ii)

█ In their motion to dismiss, Defendants first argue that this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims because Congress has divested the courts of jurisdiction over suits that seek review of immigration decisions or actions committed to agency discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255, authorizes the Attorney General to adjust to permanent resident status certain aliens who have been admitted into the United States. The INA provides in relevant part:

> The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Section 1255(a) does not set forth a time frame within which a determination must be made whether to adjust an alien's status.

Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA"), Congress amended the INA to preclude judicial review of any "decision or action of the Attorney General or the Secretary of Homeland Security, the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security" other than the granting of asylum. 8 U.S.C. § 1252(a)(2)(B)(ii). The phrase "this subchapter" refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151–1381. *See Sanusi v. Gonzales*, 445 F.3d 193, 198 (2d Cir.2006). Congress further limited the jurisdiction-removing provision of the IIRIRA by Section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, which provides that nothing in any provision of the INA "which limits or eliminates judicial review ... shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals...." 8 U.S.C. § 1252(a)(2)(D).

█ Although the Second Circuit has not spoken on this exact issue, this Court and several other district courts have found that § 1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their I–485 applications has been unreasonably delayed. *See Koren v. Chertoff*, No. 3:07–cv–157 (PCD), 2007 WL 1431948, at *3–4 (D.Conn. May 14, 2007); *Tang v. Chertoff*, 493 F.Supp.2d 148, 151–54 (D.Mass.2007); *Linville v. Barrows*, 489 F.Supp.2d 1278, 1282 (W.D.Okla.2007); *Duan v. Zamberry*, No.

06–1351, 2007 WL 626116, at *3 (W.D.Pa. Feb. 23, 2007) (a determination that § 1252(a)(2)(B)(ii) precluded judicial review of the pace at which CIS processed applications "would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."); *Huang v. Gonzales*, No. C07–0096RSM, 2007 WL 1302555, at *3–4 (W.D.Wash. May 2, 2007); *Kim v. Ashcroft*, 340 F.Supp.2d 384, 390–91 (S.D.N.Y.2004); *but see Safadi v. Howard*, 466 F.Supp.2d 696, 697–98 (E.D.Va.2006) (holding that the discretionary "action" precluded from judicial review includes the pace at which USCIS processes an adjustment of status application); *Sharif v. Chertoff*, 497 F.Supp.2d 928 (N.D.Ill.2007) (same). The jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies "not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Att'y Gen.*, 456 F.3d 88, 95 (3d Cir.2006); *see also Spencer Enters. v. United States*, 345 F.3d 683, 689 (9th Cir.2003); *Ahmed v. Gonzales*, 447 F.3d 433, 436 (5th Cir. 2006). The subchapter cited in Section 1252(a)(2)(B)(ii) specifies only that it is within the Attorney General's discretion to adjust an alien's status; "it does not address, much less specify any discretion associated with, the pace of application processing." *Duan*, 2007 WL 626116 at *2. Accordingly, while the decision to grant or deny an adjustment application is wholly discretionary, "the decision of whether to actually *adjudicate* an adjustment application … is not discretionary." *Koren*, 2007 WL 1431948 at *4 (emphasis in original). *See also Tang*, 493 F.Supp.2d at 153 ("I am not persuaded that Congress, despite its careful wording of the jurisdiction-stripping language, intended to vaguely immunize all conduct as long as the agent can be said to have exercised some discretion in the performance of it, or it can be related to a discretionary action."); *Kim*, 340 F.Supp.2d at 389; *Bartolini v. Ashcroft*, 226 F.Supp.2d 350, 353 n. 3 (D.Conn. 2002) ("the INS does not have discretion as to whether to adjudicate an adjustment of status application."); *Song v. Klapakas*, No. 06–05589, 2007 WL 1101283, at *4 (E.D.Pa. April 12, 2007) (finding that defendants' failure to adjudicate an I–485 application was not a discretionary decision); *Loo v. Ridge*, No. 04 CV 5553(DLI)(RML), 2007 WL 813000, at *3 (E.D.N.Y. March 14, 2007) (noting that adjudicating an I–485 application is not at the discretion of defendants because they are required to do so). Furthermore, nothing in the statute suggests that the speed or pace of adjudication is discretionary. *Koren*, 2007 WL 1431948 at *4; *Huang*, 2007 WL 1302555 at *4; *Duan*, 2007 WL 626116 at *2 ("Although the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the IIRI-RA."). Therefore, § 1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction over Plaintiffs' claim that the adjudication of their applications for adjustment of status has been unreasonably delayed. *Koren*, 2007 WL 1431948 at *5; *Huang*, 2007 WL 1302555 at *4. This Court's reading of the statute, i.e. that the pace of adjudicating adjustment applications is not specifically committed to the Attorney General's discretion in § 1255(a), accords with the Second Circuit's strong presumption in immigration cases in favor of judicial review of admin-

istrative action. *See Sanusi*, 445 F.3d at 199 (*citing INS v. St. Cyr*, 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)); *Sepulveda v. Gonzales*, 407 F.3d 59, 62 (2d Cir.2005).

## B. Subject Matter Jurisdiction

 Even though § 1252(a)(2)(B)(ii) does not bar judicial review of Plaintiffs' claims, the Court cannot reach the merits of Plaintiffs' Complaint unless there is a positive basis for subject matter jurisdiction. Plaintiffs allege that this Court has jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the federal question statute, 28 U.S.C. § 1331, and the Mandamus and Venue Act, 28 U.S.C. § 1361. (Compl. ¶ 2.) The APA does not provide the Court with an independent basis for subject matter jurisdiction, *see Califano v. Sanders*, 430 U.S. 99, 106–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), but Section 6 of the APA in conjunction with the federal question statute, 28 U.S.C. § 1331, does provide a basis for subject matter jurisdiction. *Koren*, 2007 WL 1431948 at \*5. Federal question jurisdiction exists where a claim: (1) turns on the interpretation of the laws or Constitution of the United States and (2) is not patently without merit. *Bartolini*, 226 F.Supp.2d at 354 (*citing Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Plaintiffs' claim turns on the interpretation of Section 6 of the APA, which provides in relevant part that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). The APA also provides for district courts to "compel agency action

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Defendants argue that § 701(a)(2) of the APA itself precludes district courts from reviewing Plaintiffs' APA claim because the adjudication of I–485 applications is committed to the Attorney General's discretion by law. (Defs.' Mem. Supp. Mot. to Dismiss 23–24.) This argument fails. Defendants are correct that the APA does not entitle a person adversely affected or aggrieved by agency action to judicial review where "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2) [1]; *see also Brock v. Pierce County*, 476 U.S. 253, 260 n. 7, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), and "agency action" is defined under the APA to include the "failure to act." 5 U.S.C. § 551(13). However, the "question whether to *adjudicate* an adjustment application . . . is not discretionary, but is governed by Section 6 of the APA, which requires CIS to take action on applications presented to it 'within a reasonable time.'" *Koren*, 2007 WL 1431948 at \*5 (emphasis in original) (*citing* 5 U.S.C. § 555(b)); *see also Kim*, 340 F.Supp.2d at 389 ("Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so."); *Bartolini*, 226 F.Supp.2d at 353–54 n. 3; *Fu v. Gonzales*, No. 07–207, 2007 WL 1742376, at \* 3 (N.D.Cal. May 17, 2007). "[W]hile it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." *Tang*, 493 F.Supp.2d at 155 (citations omitted). Accordingly, district courts within the Second Circuit have routinely found that alleging a violation of Section 6 of the APA brings the action within federal ques-

1. Section 701 also provides that a person is not entitled to judicial review where "statutes preclude judicial review." 5 U.S.C.

§ 701(a)(1). Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review; however, that argument was rejected above.

tion jurisdiction so long as the claim is not "patently without merit," *see, e.g., Koren,* 2007 WL 1431948 at *6; *Loo v. Ridge,* 2007 WL 813000 at *3; *Am. Acad. of Religion v. Chertoff,* 463 F.Supp.2d 400 (S.D.N.Y.2006); *Salehian v. Novak,* No. 3:06–cv–459 (PCD), 2006 WL 3041109, at *2, and this Court has previously held that the right to have an application for adjustment of status adjudicated within a reasonable time "cannot be said to be patently without merit." *Koren,* 2007 WL 1431948 at *6; *Salehian,* 2006 WL 3041109 at *2; *Bartolini,* 226 F.Supp.2d at 354. The Court can find no reason for a different result in this case. Therefore, this Court has subject matter jurisdiction over Plaintiffs' claim pursuant to 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b).

 Defendants also challenge the use of mandamus in this case, arguing that Plaintiffs have no clear right to such a remedy for their APA claim. The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Where the agency in charge of the adjudication fails to render a decision within a reasonable period of time, as required by § 555(b), the Court has the power to grant a writ of mandamus compelling an adjudication." *Am. Acad. of Religion,* 463 F.Supp.2d at 420; *accord Salehian,* 2006 WL 3041109 at *3. Defendants are correct that the decision whether to grant or deny Plaintiffs' I–485 applications is discretionary and lies beyond the scope of mandamus. *Koren,* 2007 WL 1431948 at *7; *see also Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (agreeing with the Attorney General's Manual on the APA, which states that Section 706(1) "empowers a court only to compel an agency 'to

perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.' "). However, "the wide latitude given the Executive to grant or deny an [adjustment] application … does not include the authority to refuse to adjudicate [an] application." *Koren,* 2007 WL 1431948 at *7 (*quoting Am. Acad. of Religion,* 463 F.Supp.2d at 421). Because USCIS's obligation to adjudicate adjustment of status applications is clearly prescribed, the failure to do so within a "reasonable" period of time constitutes "an agency['s] fail[ure] to take a *discrete* action that it is *required to take,*" *Norton,* 542 U.S. at 64, 124 S.Ct. 2373, 159 L.Ed.2d 137, thereby triggering mandamus jurisdiction in federal court. *See Koren,* 2007 WL 1431948 at *7; *Am. Acad. of Religion,* 463 F.Supp.2d at 421 (*citing Patel v. Reno,* 134 F.3d 929, 932 (9th Cir.1998) ("When the suit challenges the authority of the counsel [or other Government agent] to take or fail to take an action as opposed to a decision taken within the [agent's] discretion, jurisdiction exists.")). The power of mandamus in this case therefore falls squarely within the Court's jurisdiction.

### C. Failure to State a Claim

 Having determined that this Court has jurisdiction to hear Plaintiffs' claim, the Court now considers whether Plaintiffs have sufficiently stated a claim that Defendants' delay in adjudicating Plaintiffs'. I–485 applications is "unreasonable" under the APA. To determine whether a delay is "reasonable" under Section 6 of the APA, courts "look to the source of the delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Comm'n,* 191 F.3d 109, 120 (2d Cir.1999). In this case, Defendants have had over three years to process Plaintiffs' I–485 applications and have

failed to do so. Citing the processing times for various applications posted by USCIS on its website, Plaintiffs allege that the Vermont Service Center is currently adjudicating I–485 applications that were received more than twenty months after USCIS received their I–485s. (Compl. ¶ 22.) Defendants maintain that the fact that a delay has been lengthy does not necessarily mean that action has been unreasonably delayed and that, given the increased burdens on the FBI to conduct name check requests since September 11, 2001, Plaintiffs' wait is not unreasonable. (Defs.' Mem. Supp. Mot. to Dismiss 29–32.)

The Court understands that USCIS, in conjunction with the FBI and with the limited resources provided by Congress for these tasks, conducts several forms of security and background checks before resolving an alien's I–485 application. These checks, designed to ensure that the applicant is eligible for the benefit and does not pose a risk to national security or public security, currently include: (a) an FBI fingerprint check for relevant criminal history records; (b)· a check against the Interagency Border Inspector Security (IBIS), which is managed by the Department of Homeland Security and contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies; and (c) an FBI name check, which is run against FBI investigative databases containing information not necessarily revealed by the FBI's fingerprint check or IBIS. *See Zhi He v. Chertoff*, No. 2:07–cv–14, 2007 WL 2572359, at *1 (D.Vt. Sept. 4, 2007). The Court is sympathetic to the notion that immigration officials have been burdened since September 11, 2001 by the heightened need for security checks without receiving an adequate corresponding increase in resources and support from Congress. However, the Court still cannot consider it reasonable that it has taken Defendants more than three years in

Plaintiffs' case to complete their FBI name checks. While it is not necessary to locate the exact time at which a delay in adjudication of permanent residency applications becomes unreasonable, *see Tang*, 493 F.Supp.2d at 157, it is clear that the three years during which Plaintiffs' applications have been pending qualifies as an unreasonable delay, especially where Defendants have made no showing that Plaintiffs' applications have suggested a security risk or posed any other problem that would excuse such a delay. As the court wrote in *Tang v. Chertoff*, simply because adjustment of status is a form of discretionary relief does not mean that there is no limit to the length of time the USCIS may take processing applications; "[t]he duty to act is no duty at all if the deadline is eternity." *Tang*, 493 F.Supp.2d at 149. Given the high volume of applications and the scarcity of resources, Defendants and other agency officials may find themselves short on the resources necessary to fulfill their statutory duty within a reasonable time. While this may be a legitimate policy crisis, the Court will not excuse Defendants from their statutory duty and let the cost fall on immigrant plaintiffs. *See id.* at 158. Accordingly, Defendants' motion to dismiss is denied.

## IV. CONCLUSION

For the reasons stated above and on the record in open court on September 13, 2007, Defendants' Motion to Dismiss [Doc. No. 18] is denied. This matter is continued for 30 days, at which time the Court will enter a ruling granting Plaintiffs' I–485 applications if the matter has not yet been resolved.

SO ORDERED.