**Faduma ALI, Sattar Al Khafajy, Ghassan Safi, Nasser Al–Selham, Fatuma Elmi, Mikhail Gurevich, and Adyl Bouttaouen, Plaintiffs,**

v.

**Denise FRAZIER, District Director, U.S. Citizenship and Immigration Services, Bloomington, MN; Emilio Gonzalez, Director, U.S. Citizenship and Immigration Services, Washington, DC; Robert Mueller, Director, Federal Bureau of Investigation, Washington, DC, Defendants.**

No. 07–CV–2894 (PJS/JJG).

United States District Court, D. Minnesota.

Sept. 11, 2008.

---

23. *See* Administrative Record at 21.

24. *Id.*

25. *Id.* at 21–27.

26. *Id.* at 26.

27. *Id.*

28. *Id.; see also* Administrative Record at 21–27.

Marc Prokosch, Karam & Associates, for Plaintiffs.

Robyn A. Millenacker, United States Attorney's Office, for Defendants.

## MEMORANDUM OPINION AND ORDER

PATRICK J. SCHILTZ, District Judge.

Plaintiffs applied to the United States Citizenship and Immigration Services ("CIS") to become naturalized citizens of the United States. After growing unhappy with the pace of CIS's processing of their applications, plaintiffs brought this suit against CIS officials and the director of the Federal Bureau of Investigation ("FBI"), asking this Court to order CIS and the FBI to speed things up. Plaintiffs made claims under the Mandamus Act, 28 U.S.C. § 1361, and under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1).

▇ Since this suit was filed, CIS has approved six of the seven plaintiffs' applications. Those six plaintiffs, who are now naturalized citizens, concede that their claims are moot, and the Court therefore dismisses their claims.[1] See Pl. Mem. Resp. Def. Mot. Dism. & Remand at 1 ("Pl.Opp.Mem.") [Docket No. 19]; Letter of Pl. Counsel to Court, July 16, 2008 [Docket No. 25].

This leaves one remaining plaintiff, Nasser Al–Selham. The government moves to dismiss Al–Selham's claims, arguing that this Court does not have subject-matter jurisdiction over this action and that, on the merits, Al–Selham's complaint should be dismissed because he is not entitled to relief under either the Mandamus Act or the APA. For the reasons that follow, the Court holds that it does indeed have subject-matter jurisdiction over this action. On the merits, the Court dismisses all claims against the FBI and the mandamus claims against CIS; the Court does not, however, dismiss the APA claims against CIS.[2]

---

1. The government moved to dismiss as moot the claims of five plaintiffs: Faduma Ali, Sattar Al Khafajy, Fatuma Elmi, Mikhail Gurevich, and Adyl Bouttaouen. Def. Mot. Dism. [Docket No. 11]. CIS had processed their applications by the time of the government's motion. The government moved to remand the claims of a sixth plaintiff, Ghassan Safi, because CIS had not processed his application at the time of the motion but expected to do so soon. Id. Safi's application has since been approved, and he has become a naturalized citizen. Letter of Pl. Counsel to Court, July 16, 2008 [Docket No. 25]. There is thus no reason to remand Safi's application to CIS, because his claims, like the claims of the other five plaintiffs, are moot.

2. As a formal matter, plaintiffs' suit is against officials of CIS and the FBI in their representative capacities. But for ease of exposition,

## I. BACKGROUND

The naturalization process begins when a non-citizen files with CIS an application for naturalization (Form N–400). By regulation, CIS must then "complete an investigation" of the applicant. 8 C.F.R. § 335.1. Further, the applicant must "appear in person before a[CIS] officer" for an "examination"—that is, an in-person interview. 8 C.F.R. § 335.2(a); *see also Walji v. Gonzales,* 500 F.3d 432, 435 & n. 5 (5th Cir.2007) (observing that most courts have held that an "examination" under 8 U.S.C. § 1447(b) is "a discrete event—the agency's initial interview of the applicant"). CIS must then grant or deny the application within 120 days of the interview. 8 C.F.R. § 335.3.

The interview, however, can be scheduled "only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b) (emphasis added). The FBI background check referred to in 8 C.F.R. § 335.2(b) is commonly called a "name check."

In sum, the naturalization process involves four steps, which must be completed in order. In step 1, the applicant files a Form N–400. In step 2, the FBI completes a name check at CIS's request. In step 3, CIS interviews the applicant. Finally, in step 4, CIS adjudicates the application on the merits.

The second step has become a bottleneck because the FBI has large numbers of pending name-check requests and limited resources to complete them. As a result, a new genre of case has proliferated in the past few years: name-check litigation.

This case exemplifies the genre. Al–Selham, who is originally from Saudi Arabia, applied to become a naturalized United States citizen by filing Form N–400 with CIS in June 2006. Compl. ¶ 11. He has not yet been interviewed. *Id.* CIS will not schedule his interview because the FBI has not completed his name check. *Id.* Al–Selham contends that he meets all of the statutory requirements for naturalization. *Id.* ¶ 16–17. He seeks an order compelling CIS and the FBI to complete all required background checks and to adjudicate his application for naturalization. *Id.* ¶ 1 (second).

## II. ANALYSIS

### 1. *Subject–Matter Jurisdiction*

Al–Selham asserts in the complaint that the Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1361. Compl. ¶ 2. Under § 1331, the federal-question statute, federal district courts "have original jurisdiction of any civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under § 1361, the Mandamus Act, federal district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361.

On its face, the complaint establishes a basis for mandamus jurisdiction under § 1361. Specifically, the complaint names as defendants three federal officials, two from CIS and one from the FBI. The complaint further asserts that CIS owes a duty to Al–Selham to adjudicate his naturalization application in a reasonable time. Compl. ¶ 22. And the complaint asks the Court to order all defendants, including the FBI, "to perform their duty to complete the required background checks and

the Court will refer to the defendants as CIS and the FBI.

security clearances and to adjudicate Plaintiffs' applications for naturalization...." Compl. ¶ 1 (second).

■ The complaint also seems to establish a basis for federal-question jurisdiction under § 1331. In particular, the complaint asserts that it is based on the Administrative Procedure Act ("APA"). Compl. ¶ 2. The APA provides, as a general matter, that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA also provides that federal courts "shall ... compel agency action unlawfully withheld or unreasonably delayed...." 5 U.S.C. § 706(1). It is black-letter law that federal courts have jurisdiction under § 1331 over suits against agencies seeking to enforce provisions of the APA. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Black Hills Inst. of Geological Research v. S.D. School of Mines & Tech.*, 12 F.3d 737, 740 (8th Cir.1993) (citing *Califano* ).

The government, however, contends that the Court lacks subject-matter jurisdiction over plaintiffs' mandamus and APA claims. The government is mistaken.

■ Mandamus relief is available only if a plaintiff establishes three things: (1) a clear and indisputable right to the relief sought, (2) a non-discretionary duty on the defendant's part to honor that right, and (3) the unavailability of any other adequate remedy. *Castillo v. Ridge*, 445 F.3d 1057, 1060–61 (8th Cir.2006). A plaintiff must make a similar showing to be granted injunctive relief under the APA. *See, e.g., Hernandez–Avalos v. INS*, 50 F.3d 842, 844 (10th Cir.1995) (describing the APA and the Mandamus Act as "merely different means of compelling an agency to take action which by law it is required to take") (citation omitted); *Gelfer v. Chertoff,* No. C

06–6724 WHA, 2007 WL 902382, at *3 (N.D.Cal. Mar.22, 2007) ("Relief under mandamus and the APA are virtually equivalent when a petitioner seeks to compel an agency to act on a nondiscretionary duty.").

But whether a plaintiff is *entitled to relief* is a separate question from whether a court has jurisdiction to *decide* whether a plaintiff is entitled to relief. The government overlooks this crucial distinction. As the government would have it, no federal court could deny a claim like Al–Selham's on the merits, because, if the claim were meritless, a federal court would not have authority to hold that it was meritless.

The government addresses the question of subject-matter jurisdiction in one conclusory sentence at the end of one section of its memorandum in support of its motion to dismiss. The section heading asserts that Al–Selham "fails to state a claim for relief under the Mandamus statute and under the Administrative Procedure Act." Def. Mem. Supp. Mot. Dism. at 10. In the next paragraph, the government asserts that Al–Selham "fails to state a cause of action under the Mandamus statute" because "there is no ministerial duty to decide [his] naturalization application at this time...." *Id.* at 11. In the paragraph after that, the government likewise asserts that Al–Selham "fails to state a cause of action under the APA" because "an interview on [his] application and any subsequent decision is not 'legally required' at this time...." *Id.* at 12. The section then concludes with this non sequitur: "Accordingly, Plaintiff Al–Selham's lawsuit should be dismissed for failure to establish subject matter jurisdiction...." *Id.*

The government's entire argument preceding this last assertion addressed the *merits* of Al–Selham's claims. In that argument, the government provided no sup-

port whatsoever for the proposition that the Court lacks *jurisdiction* over those claims.

As the Supreme Court said over sixty years ago in *Bell v. Hood,* "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). This rule admits of limited exceptions: "wholly insubstantial and frivolous" claims can arguably be dismissed for lack of jurisdiction, as can claims that "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction...." *Id.* at 682–83, 66 S.Ct. 773.

With respect to mandamus claims in particular, the Seventh Circuit cogently explained in *Ahmed v. Department of Homeland Security* the distinction between dismissals for failure to state a claim and dismissals for lack of subject-matter jurisdiction. 328 F.3d 383, 386–87 (7th Cir.2003). *Ahmed* held:

> [U]nless the claim is so frivolous that it fails the *Bell v. Hood* test, the district court has jurisdiction under [28 U.S.C.] § 1361 to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief.

*Id.; see also Houle v. Riding,* No. CV–F–07–1266–LJO–GSA, 2008 WL 223670, at *6–7 (E.D.Cal. Jan.28, 2008) (rejecting jurisdictional challenge in immigration-delay case because challenge went to the merits).

▮ Neither Al–Selham's mandamus claims nor his APA claims are so frivolous that they should be dismissed for lack of subject-matter jurisdiction. Whether the government has a clear duty to Al–Selham that is enforceable by way of mandamus or under the APA is a separate issue that goes to the merits of his claims, to which the Court turns.

### 2. Whether the Complaint States a Claim

#### 1. Standard of Review

▮ The government purports to bring a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Procedure. But as Al–Selham points out, the government made this motion after filing its answer. Pl. Opp. Mem. at 16. By its terms, Rule 12 provides that such a motion "*must* be made before pleading if a responsive pleading is allowed." Fed.R.Civ.P. 12(b) (emphasis added). As a leading treatise observes, "A strict interpretation of [this] language leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (3d ed.2004). But as that treatise also observes, as long as the defense of failure to state a claim has been asserted in the answer, federal courts routinely consider defendants' post-answer motions raising the defense "although technically they are no longer Rule 12(b) motions." *Id.*

The Court will therefore treat the government's motion to dismiss for failure to state a claim as a Rule 12(c) motion asserting the same argument. *See Westcott v.*

*City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). As the Eighth Circuit held in *Westcott,* because motions to dismiss for failure to state a claim are subject to the same legal standard whether brought under Rule 12(b)(6) or Rule 12(c), the distinction is "purely formal...." *Id.*

In evaluating a motion to dismiss, this Court must accept as true the complaint's factual allegations and then determine whether those allegations show that the plaintiff is entitled to relief. *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* —— U.S. ——, ˙ 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). But even under this standard, "detailed factual allegations" are not necessary to survive a motion to dismiss. *Id.* at 1964; *see also Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir.2008) (*"Bell Atlantic* must not be overread.").

### 2. Mandamus and the APA

As noted above, plaintiffs who seek relief for immigration delays under either the APA or § 1361 must make essentially the same showing. *See, e.g., Han Cao v. Upchurch,* 496 F.Supp.2d 569, 575 (E.D.Pa.2007) ("Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive."); *Sawad v. Frazier,* No. 07–1721, 2007 WL 2973833, at *3 n. 5 (D.Minn. Oct.9, 2007) ("In cases asserting unreasonable delay by USCIS in processing adjustment of status applications, many courts

have noted that analysis of jurisdiction and relief under the Mandamus Act and the APA is coextensive."). After all, in such cases, it is the APA that imposes a duty of timeliness on the government, and that duty of timeliness is the duty that the plaintiff seeks a writ of mandamus to enforce. Specifically, under § 555(b) of the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). And under § 706(1) of the APA, federal courts will compel "unreasonably delayed" agency action. 5 U.S.C. § 706(1).

■ Because in immigration-delay cases like this one, the duty to be enforced by way of mandamus is a duty of timeliness established by the APA, there is little reason to consider mandamus claims separately from claims under the APA. *See, e.g., Sawad,* 2007 WL 2973833, at *3 n. 5 (holding in immigration-delay case that "there is no need for two separate analyses" of APA and mandamus claims). Indeed, counsel for Al–Selham conceded as much at the hearing on the government's dismissal motion.

The Court dismisses Al–Selham's mandamus claims, and not merely because they are duplicative. Mandamus is a cause of action of last resort. Even if a plaintiff establishes that a defendant owes him a clear and enforceable duty, mandamus is available only if the plaintiff has no other remedy. *See Castillo,* 445 F.3d at 1060–61. But the APA itself provides a remedy for unlawfully delayed agency action, so plaintiffs in immigration-delay cases *have* a remedy available other than mandamus. *See Hernandez–Avalos,* 50 F.3d at 845 n. 6 ("The weight of scholarly authority suggests that mandamus and mandatory injunctions ought to be judged by the same standards, or even that man-

damus adds nothing to what is already available by injunction under 28 U.S.C. § 1331 (the federal question statute) and ought to be abolished entirely.") (citations omitted).

Having dismissed Al–Selham's mandamus claims, the Court now turns to his claims under the APA.

### 3. Claims Versus the FBI

The parties agree that Al–Selham's application is stalled because CIS is waiting for the FBI to complete his name check. Al–Selham contends that the FBI owes him a duty to conduct the name check, has unreasonably delayed fulfilling that duty, and has therefore violated the APA's timeliness requirement. Pl. Opp. Mem. at 13–15.

■ The government, however, denies that the FBI owes Al–Selham a duty to conduct a name check within a particular time period. Def. Mem. Supp. Mot. Dism. at 13. According to the government, "[t]he FBI is responsible for conducting investigations concerning national security background checks but is not subject to time limits under any statute or under the APA or mandamus." *Id.* Although it is a close question, the Court agrees with the government that Al–Selham fails to state a claim under the APA against the FBI because, as a matter of law, the FBI does not owe Al–Selham a duty to conduct a timely name check.

No statute expressly imposes a duty on the FBI to conduct name checks in connection with immigration applications. Instead, the duty—if it exists—arises by implication from the statutory and regulatory scheme governing immigration applications. As noted above, under 8 C.F.R. § 335.2(b), CIS may interview an applicant "only after [CIS] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b) (emphasis added). By its terms, this regulation is directed toward CIS alone. Although it *implies* that the FBI must conduct background checks, it does not *direct* the FBI to do so.

Further, CIS is prohibited by an appropriations statute from adjudicating immigrants' applications for naturalization until FBI background checks are completed. In particular, Public Law 105–119 provides that "during fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to [CIS] shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed...." Act of Nov. 26, 1997, Pub.L. No. 105–119, 111 Stat. 2440, 2448–49. Moreover, the FBI is authorized by statute to collect fees from CIS for conducting name checks on the agency's behalf, and CIS pays the FBI for name checks out of the fees CIS collects from applicants.[3] These provisions also *imply* that the FBI must conduct background checks, but, again, they do not *direct* the FBI to do so.

Federal courts are divided over whether this statutory and regulatory scheme imposes on the FBI a duty, owed to immigrants and enforceable under the APA, to

---

**3.** *See* Act of Nov. 5, 1990, Pub.L. No. 101–515, 104 Stat. 2101, 2112 ("[F]or fiscal year 1991 and hereafter the Director of the [FBI] may establish and collect fees to process fingerprint identification records and name checks for non-criminal justice, non-law enforcement employment and licensing pur-

poses...."); Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule (Proposed Rule), 72 Fed.Reg. 4888, 4899 (Feb. 1, 2007) ("USCIS pays the FBI for fingerprint and name checks performed on certain immigration and naturalization benefit applications.").

conduct timely name checks. When name-check cases first began to proliferate, the clear trend among district courts was to find no such enforceable duty, and many courts still take this approach.[4] The trend in recent cases, however, seems to be shifting in the other direction.[5] Indeed, one district court that recently found in favor of a duty on the FBI's part said that it was following the "majority" approach. *Dawoud v. Dep't of Homeland Sec.*, No. 3:06–

CV–1730–M, 2007 WL 4547863, at *6 (N.D.Tex. Dec. 26, 2007) ("The majority of the few courts to address the issue have specifically found that the FBI has a mandatory duty to perform background checks.... The Court finds the majority view persuasive."). This Court, however, doubts that a majority approach exists.

District courts are divided because any enforceable duty on the FBI's part to do

---

4. *See, e.g., Wang v. Gonzales,* No. 07–02272–JWL–DJW, 2008 WL 45492, at *3 (D.Kans. Jan. 2, 2008); *Ibrahim v. Chertoff,* 529 F.Supp.2d 611, 614 (E.D.N.C.2007); *Mitova v. Chertoff,* No. 07–2631, 2007 WL 4373045, at *6 (E.D.Pa. Dec.13, 2007); *Costa v. Chertoff,* No. 07–2467, 2007 WL 4456218, at *1 (E.D.Pa. Dec.11, 2007); *Zhu v. Chertoff,* 525 F.Supp.2d 1098, 1102 (W.D.Mo.2007) (holding that "the Court cannot directly compel the FBI to perform name checks"); *Sinha v. Upchurch,* No. 1:07 CV 2274, 2007 WL 4322225, at *4–5 (N.D.Ohio Dec.7, 2007); *Dairi v. Chertoff,* No. 07CV1014, 2007 WL 3232503, at *1 (S.D.Cal. Nov. 1, 2007); *Azadegan v. Chertoff,* No. 07–CV–11238, 2007 WL 2822783, at *7 n. 2 (E.D.Mich. Sept.27, 2007); *Antonishin v. Keisler,* No. 06 CV 2518, 2007 WL 2788841, at *6–7 (N.D.Ill. Sept. 20, 2007); *Omar v. Mueller,* 501 F.Supp.2d 636, 640 (D.N.J.2007); *Eldeeb v. Chertoff,* No. 8:07–CV–236–T–17EAJ, 2007 WL 2209231, at *22 (M.D.Fla. July 30, 2007); *Konchitsky v. Chertoff,* No. C–07–00294, 2007 WL 2070325, at *6 (N.D.Cal. July 13, 2007); *Yan v. Mueller,* No. H–07–0313, 2007 WL 1521732, at *7–9 (S.D.Tex. May 24, 2007); *Sozanski v. Chertoff,* No. 3:06–CV–0993–N, 2006 WL 4516968, at *1 (N.D.Tex. Dec. 11, 2006); *Shalabi v. Gonzales,* No. 4:06CV866, 2006 WL 3032413, at *5 (E.D.Mo. Oct.23, 2006); *Zaytsev v. Gantner,* No. 04 Civ.7101, 2004 WL 2251665, at *1 (S.D.N.Y. Sept.24, 2004).

The reasoning in these cases is varied—some deny relief against the FBI on jurisdictional grounds while others do so on the merits; some consider the Mandamus Act while others look at the APA. But they all reach the same result and hold that federal courts cannot order the FBI to act more quickly on name-check requests.

5. *Dawoud v. Dep't of Homeland Sec.,* No. 3:06–CV–1730–M, 2007 WL 4547863, at *6–7 (N.D.Tex. Dec. 26, 2007); *Moretazpour v. Chertoff,* No. C 07–4264 BZ, 2007 WL 4287363, at *1 (N.D.Cal. Dec.5, 2007) ("[T]he FBI has a mandatory duty to complete its background check within a reasonable time even though that duty is not expressly stated in a statute."); *Khdir v. Gonzales,* No. 07–CV–00908–MSK–MEH, 2007 WL 3308001, at *6 (D.Colo. Nov.6, 2007); *Assadzadeh v. Mueller,* No. 07–2676, 2007 WL 3252771, *5 (E.D.Pa. Oct.31, 2007); *Ajmal v. Mueller,* No. 07–206, 2007 WL 2071873, at *2 (E.D.Pa. July 17, 2007); *Kaplan v. Chertoff,* 481 F.Supp.2d 370, 400–01 (E.D.Pa.2007).

All of these cases expressly decided that the FBI had an enforceable duty under either the Mandamus Act or the APA to conduct timely name checks. In many other immigration-delay cases, courts have not expressly addressed the nature of the FBI's duty but have nonetheless allowed plaintiffs to proceed against the FBI. *See, e.g., Sawad v. Frazier,* No. 07–1721, 2007 WL 2973833 (D.Minn. Oct.9, 2007); *Alkeylani v. Dep't of Homeland Sec.,* No. 3:07–CV–504, 514 F.Supp.2d 258 (D.Conn.2007); *Bondarenko v. Chertoff,* No. 07–MC–00002, 2007 WL 2693642 (W.D.N.Y. Sept.11, 2007); *Elhaouat v. Mueller,* No. 07–632, 2007 WL 2332488 (E.D.Pa. Aug.9, 2007); *Alhamedi v. Gonzales,* No. 07 Civ. 2541, 2007 WL 1573935 (S.D.N.Y. May 30, 2007); *Alhassan v. Gonzales,* No. 06–CV–01571–REB–MJW, 2007 WL 1455841 (D.Colo. May 16, 2007); *Mahd v. Chertoff,* No. 06–CV–01023–WDM–PAC, 2007 WL 891867 (D.Colo. March 22, 2007); *Gelfer v. Chertoff,* No. C 06–6724 WHA, 2007 WL 902382 (N.D.Cal. Mar.22, 2007); *Kheridden v. Chertoff,* No. 06–4792, 2007 WL 674707 (D.N.J. Feb.28, 2007); *Lazli v. USCIS,* No. 05–CV–1680–BR, 2007 WL 496351 (D.Or. Feb.12, 2007); *Ahmed v. Chertoff,* No. H–06–MC–0417, 2006 WL 3771814 (S.D.Tex. Dec.15, 2006).

timely name checks arises only by implication, and there is no clear authority on whether such implicit duties can be enforced under the APA. Congress has used the power of the purse to prevent CIS from processing immigrants' applications until FBI name checks are complete. In doing so, Congress has legislated consistently with 8 C.F.R. § 335.2(b), which requires CIS to wait on those name checks before interviewing applicants and adjudicating their applications. Plainly, then, Congress understands and supports CIS's practice of waiting on the completion of FBI name checks. But just as plainly, Congress could have passed a statute expressly requiring the FBI to conduct name checks. Congress did not do so. Congress obviously assumed that the FBI would conduct name checks, but Congress did not direct the FBI to do so.

In finding an enforceable duty on the FBI's part to conduct timely name checks, *Kaplan v. Chertoff* held that "Congress has, by implication, imposed on the FBI a mandatory duty to complete" name checks. 481 F.Supp.2d 370, 400–01 (E.D.Pa.2007). Underlying this conclusion is *Kaplan's* assertion that "an agency's mandatory duty to act may be expressed in a single statute or from several Congressional enactments which, read together, clearly imply a mandatory duty." *Id.* at 400. But to support *this* assertion, *Kaplan* relies on the very general principle (supported by citations to one Third Circuit case and one Supreme Court case) that congressional intent can sometimes be inferred "by examining several legislative enactments side by side" or "by examining a legislative scheme as a whole." *Id.* It is hardly clear to this Court that this unremarkable observation about discerning legislative intent supports the conclusion that a duty enforceable under the APA can arise by implication.

*Kaplan* is downright scholarly, however, compared to many cases that have found no enforceable duty on the FBI's part to do timely name checks. For instance, *Sinha v. Upchurch* held that no such duty existed and stated: "It is axiomatic that any nondiscretionary duty Congress imposes upon an agency must be a *clear,* nondiscretionary duty." No. 1:07 CV 2274, 2007 WL 4322225, at *5 (N.D.Ohio Dec.7, 2007). Citing no authority for this "axiomatic" proposition, *Sinha* further concluded that the appropriations statute that forbids CIS from spending money on naturalization applications until after CIS receives name-check results from the FBI "falls far short of imposing a clear, nondiscretionary duty on the part of the FBI" to do name checks. *Id.*

Unsupported legal principles likewise underlie *Eldeeb v. Chertoff,* which held that under the Mandamus Act, the FBI did not owe immigrants an enforceable duty to conduct timely name checks.[6] No. 8:07–CV–236–T–17EAJ, 2007 WL 2209231 (M.D.Fla. July 30, 2007). *Eldeeb* held: "Given that there is no sole statute or regulation that imposes a duty on the FBI to an applicant, and the one court that did find a duty [i.e., *Kaplan* ] found it through implication, there does not appear to be a *clear* duty *to an applicant* to act, which is required for Mandamus Act jurisdiction." *Id.* at *22.[7] This holding depends on the

---

**6.** Because, as discussed above, injunctive relief under the APA is available on the same terms as mandamus relief under § 1361, the analysis in *Eldeeb* logically extends to APA claims.

**7.** Interestingly, *Eldeeb* also held that in light of the appropriations statute, the FBI "has a non-discretionary duty *to CIS* to process Name Checks." 2007 WL 2209231, at *22. This holding appears to be both unique and insignificant, since the federal government is unlikely to sue itself.

principle that unless a "sole statute or regulation"—rather than, say, the clear implication of a statutory scheme—imposes a duty upon an agency, that duty is not enforceable by way of mandamus, regardless of how clearly implied the duty's existence might be. *Eldeeb* might be correct, but it simply takes this principle as a given.

The Supreme Court has not addressed whether clear but implicit duties are enforceable under the APA. The Court believes, however, based on language in *Norton v. Southern Utah Wilderness Alliance* ("*SUWA*"), that the Supreme Court would find that the FBI's implicit duty to do name checks is *not* enforceable under the APA. 542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). Specifically, *SUWA* held that APA claims under 5 U.S.C. § 706(1) for unlawfully withheld or unreasonably delayed action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Id.* at 64, 124 S.Ct. 2373. An FBI name check is a "discrete" action; the question is whether it is also "required."

*SUWA* explained that "[t]he limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Id.* at 65, 124 S.Ct. 2373. In applying this standard, *SUWA* held that assertions in a land-use plan that the Bureau of Land Management "will" take certain actions "are not a legally binding commitment enforceable under § 706(1)." *Id.* at 72, 124 S.Ct. 2373. From these two statements in *SUWA*, we know two things: First, action "demanded by law" is "required" and therefore enforceable under § 706(1). Second, suits under § 706(1) can be brought to enforce

an agency's "legally binding commitment" to take action.

There is no evidence that the FBI has itself made a "legally binding commitment" to do name checks, whether by adopting regulations requiring that it do so or otherwise. The Court further finds that the FBI is not "demanded by law" to conduct name checks. The word "demand" connotes an explicit command, not an implicit one. And no statute "demands" that the FBI conduct name checks.

To be sure, the appropriations measure on the subject reveals an *expectation* on Congress's part that the FBI will conduct name checks on CIS's behalf. But an expectation is not a demand. Likewise, 8 C.F.R. § 335.2(b) rests on an *assumption* that the FBI will do name checks, but the regulation is directed to CIS, not to the FBI. Put another way, § 335.2(b) forbids CIS to do certain things (conduct interviews before receiving name-check results from the FBI), but it neither forbids nor requires the FBI to do anything. Because this Court reads *SUWA* as holding that implicit duties are not enforceable under the APA, this Court dismisses Al–Selham's APA claims against the FBI for failure to state a claim.

#### 4. Claims Versus CIS

In contrast to the FBI, CIS has express regulatory obligations with respect to immigration applications. Section 335.3 of Title 8 of the Code of Federal Regulations provides that CIS "*shall* grant the application [for naturalization] if the applicant has complied with all requirements for naturalization under this chapter." 8 C.F.R. § 335.3 (emphasis added). Likewise, 8 C.F.R. § 316.14(b)(1) provides: "Subject to supervisory review, the employee of [CIS] who conducts the examination under paragraph (a) of this section [of an applicant for naturalization] *shall* determine whether to grant or deny the application,

and *shall* provide reasons for the determination, as required under section 335(d) of the [Immigration and Naturalization] Act." 8 C.F.R. § 316.14(b)(1) (emphasis added). This Court thus has no difficulty in holding that CIS is required to adjudicate Al–Selham's naturalization application and, under the APA, must do so within a reasonable time. 5 U.S.C. §§ 706(1), 555(b); *see, e.g., Costa v. Chertoff,* No. 07–2467, 2007 WL 4456218, at *4 (E.D.Pa. Dec.11, 2007); *see also Sawad,* 2007 WL 2973833, at *3 (holding that CIS must adjudicate adjustment-of-status applications within a reasonable time).

In this case, CIS is waiting for the FBI to complete Al–Selham's name check. The government contends that because CIS cannot schedule an interview with Al–Selham until it receives the result of his name check, CIS does not yet have a duty to adjudicate Al–Selham's application, and his complaint therefore fails to state a claim. Def. Mem. Supp. Mot. Dism. at 12. The Court disagrees.

Al–Selham's complaint would fail to state a claim for delay against CIS only if, taking all the complaint's allegations as true, Al–Selham could not prevail against CIS under the APA. *See Schaaf,* 517 F.3d at 549. The key allegations in Al–Selham's complaint are as follows: He applied for naturalization in June 2006; he meets all of the criteria for, and is not statutorily ineligible for, naturalization; the FBI has not completed his name check; and CIS will not schedule the required interview until the FBI completes its name check. Compl. ¶¶ 11, 16–17, 19.

■ The Court cannot say, as a matter of law, that CIS's delay in adjudicating Al–Selham's application is reasonable. Whether the delay is reasonable or not—that is, whether CIS has violated the APA—is a fact-intensive question. *See, e.g., Sawad,* 2007 WL 2973833, at *4–5. Had Al–Selham filed suit to compel action by CIS one week after having filed his application, the Court could easily dismiss the suit, as a one-week delay is patently reasonable. But at this point, two years have passed since Al–Selham filed his application. The Court cannot say that this delay is so brief that, as a matter of law, it is reasonable.[8]

The Court also cannot say, as a matter of law, that CIS's delay is *necessarily* reasonable because CIS is waiting on the FBI name check. It is true that CIS cannot process a naturalization application until it receives the results of an FBI name check; but it is *not* true that CIS is entirely at the mercy of the FBI's schedule. Michael Cannon, the head of the FBI's name-check program, explains in his declaration in this case that CIS can ask the FBI to expedite a name check. Cannon Decl. ¶ 18 ("US-CIS determines which name checks are to be expedited based on criteria it determines. Once designated as an 'expedite,' that name check proceeds to the front of the queue along with other prioritized name check requests, in front of the others waiting to be processed."). CIS does not contend that it has asked the FBI to expedite Al–Selham's name check. Thus, CIS has not done everything within its power to speed up its adjudication of Al–Selham's application.

The reasonableness of CIS's delay in processing Al–Selham's application thus turns on the reasonableness of CIS's deci-

---

8. When Al–Selham filed his complaint, his application had been pending for only a year. Such a one-year delay is probably reasonable as a matter of law. But Al–Selham's application is still pending at CIS, and by now his application has been pending for over two years. For purposes of the government's motion to dismiss, the Court considers the government's delay through the date of this order.

sion not to ask the FBI to expedite the name check. If it is unreasonable for CIS to refrain from asking the FBI to expedite Al–Selham's name check, then CIS is unreasonably delaying its adjudication of Al–Selham's application, and Al–Selham has a right to relief under the APA. (That relief would likely take the form of an order to CIS that it request the FBI to expedite Al–Selham's name check.)

CIS has submitted no evidence with respect to its policies about asking the FBI to expedite name checks—even though, according to Cannon, CIS "determines which name checks are to be expedited based on *criteria it determines.*" *Id.* (emphasis added). Cannon does not identify what criteria CIS uses in deciding whether to ask the FBI to expedite a name check; nor does the government presents any evidence that CIS has followed those criteria (whatever they may be) in processing Al–Selham's naturalization application. Accordingly, in light of CIS's ongoing delay in adjudicating Al–Selham's application and CIS's inability to establish that this delay is, as a matter of law, reasonable, Al–Selham's complaint states a claim under the APA.

### ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion to dismiss [Docket No. 11] is GRANTED IN PART and DENIED IN PART as follows:

1. The claims of the following plaintiffs are DISMISSED WITHOUT PREJUDICE AS MOOT:
 a. Faduma Ali;
 b. Sattar Al Khafajy;
 c. Ghassan Safi;
 d. Fatuma Elmi;
 e. Mikhail Gurevich; and

f. Adyl Bouttaouen.

2. To the extent that defendants' motion to dismiss asserts that plaintiffs fail to state a claim under 28 U.S.C. § 1361, the motion is GRANTED, and plaintiffs' claims under 28 U.S.C. § 1361 are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. To the extent that defendants' motion to dismiss asserts that plaintiffs fail to state a claim under the Administrative Procedure Act, the motion is GRANTED with respect to defendant Robert Mueller, Director of the Federal Bureau of Investigation, and plaintiffs' claims against Mueller are DISMISSED WITH PREJUDICE AND ON THE MERITS.

4. Defendants' motion is DENIED in all other respects.